310 S.E.2d 467

STATE of West Virginia

v.

James Ray JARVIS.

No. 15910.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1983.

John R. Mitchell, Charleston, for appellant.

J. Bradley Russell, Asst. Atty. Gen., Janet Frye Steele, Asst. Atty. Gen., Charleston, for appellee.

HARSHBARGER, Justice:

James Ray Jarvis was convicted in the Circuit Court of Fayette County of four misdemeanor offenses: (1) speeding; (2) refusing to display his automobile registration card on demand; (3) illegally hindering or obstructing a police officer in the exercise of his official duty; and (4) reckless driving. Jarvis' primary contentions in this appeal are that the trial court should have granted judgments of acquittal on the reckless driving and obstruction of a police officer charges. Jarvis also contends the prosecuting attorney violated a plea bargain agreement. We do not agree with these contentions and affirm. Jarvis assigns other errors, but we will not address them as they are without any merit.

I

One afternoon in May of 1981, Trooper Fred D. Sylvester was operating a stationery radar device on Route 39 in Fayette County. The evidence, when viewed in the light most favorable to the prosecution, shows that Jarvis was driving a automobile at 69 miles per hour in a 55 mile per hour speed zone. Trooper Sylvester activated his flashing lights and siren and pursued Jarvis for about two-tenths of a mile, until Jarvis turned off the highway into a drive-

way by his mobile home. After coming to a stop behind Jarvis' vehicle, the trooper stepped out of his cruiser and walked toward Jarvis' vehicle. As he approached, Jarvis opened the door and got out. Upon request Jarvis gave the trooper his driver's license but upon walking around his vehicle and taking a seat on the passenger side, he told the trooper that he would not produce the vehicle registration card, unless the trooper had a warrant. After some discussion concerning the speeding violation, Jarvis again refused to produce the registration card and told the trooper to "go get your warrants." The trooper returned Jarvis' driver's license and without giving him a ticket, left the scene to obtain warrants for his arrest.

The trooper later obtained arrest warrants for Jarvis but, for reasons not important here, the warrants were not executed immediately. On June 6, Trooper Sylvester and a Trooper Bennett were traveling south on Route 39 when they were stopped in a line of traffic due to a mud slide. A flagman was there permitting traffic to move in only one lane at a time. When the flagman let the southbound lane through, the troopers came upon Jarvis, whose car was stopped in the northbound lane. Jarvis was outside of his vehicle talking to Naamon Byrd.

Trooper Bennett then got out of the cruiser and advised Mr. Jarvis that they had warrants for his arrest. Jarvis turned to Mr. Byrd and told him to tell Jarvis' wife to bring $5,000 to the magistrate's office for bond. Jarvis then expressed concern about what was to be done with his car, and Trooper Bennett said that rather than have it towed, Jarvis could go ahead and drive it to a particular wrecker service about a mile up the road, where he could park it, lock it up and take the keys with him. The troopers got back in their cruiser, drove down the road and pulled into the back of the northbound line of traffic. After the traffic began moving and they had traveled some distance, the troopers observed that Jarvis had passed several cars in a straight stretch and did not stop at the wrecker service. A short time later they observed Jarvis pass two or three more

cars in a no-passing zone and in a totally blind curve. On this stretch of the highway, there was no berm on the left-hand side of the road.

By this time, the troopers had turned on their blue flashing lights and siren and some of the cars between them and Jarvis' were pulling off the road; however, it was not possible to pass all these vehicles given the curvy highway and they eventually lost sight of Jarvis' vehicle. The troopers continued travelling north until they came to Jarvis' mobile home, where they found his car parked in the driveway with the door still open, but Jarvis was nowhere to be found.

Jarvis went to the local magistrate's office at about noon on the following day and posted bond on the two warrants that had been previously issued. Later that evening Jarvis was arrested by Trooper Sylvester and Bennett and was taken to the state police detachment in Gauley Bridge, and from there was taken to magistrate court. He was later charged with reckless driving and obstructing a police officer.

## II

Although Jarvis cites no authority, he argues that his conduct does not constitute the crime of unlawfully hindering or obstructing a police officer in the exercise of his official duties. *W.Va.Code*, 61–5–17. Jarvis asserts that he simply failed to follow the trooper's request to stop and leave his car at a wrecker service, and thus did not violate the law.

We do not agree. Jarvis was properly charged and convicted under *W.Va.Code*, 61–5–17, which provides:

"Any person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose, or shall counsel, advise or invite others to hinder, obstruct or oppose any officer in this State (whether civil or military) in the lawful exercise or discharge of his official duty, shall, for every such offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty

nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned not exceeding one year."

There is not a wealth of case law in this jurisdiction on the scope of this statute, but we did discuss this provision in *State v. Johnson,* 134 W.Va. 357, 59 S.E.2d 485 (1950). In that case the defendant had assisted and made possible the escape of a prisoner from the lawful custody of a deputy sheriff in Ritchie County. The defendant, in challenging the sufficiency of the indictment, argued that his actions did not constitute an obstruction of an officer in the discharge of his official duties. In affirming the conviction, we stated:

"We are of the opinion that no such restricted meaning should be given to the word obstruct as used in the statute. The words 'forcibly or illegally' used in the statute clearly mean any unlawful interference with the officer in the discharge of his official duties, whether or not force be actually present. It is undoubtedly the duty of an officer to keep safe custody of a prisoner after his lawful arrest, and to assist that prisoner in making an escape is an interference with the officer in the discharge of his official duties, and, notwithstanding no force or act be directed against the person of the officer, there is a direct interference with the officer in the discharge of his official duties. In *State v. Estes,* 185 N.C. 752, 117 S.E. 581, 583, the Court, in considering a very similar statute, said: ' * * * We do not hold that actual violence or demonstration of force is indispensable to such obstruction or interference. To "interfere" is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the performance of his legal duty; and to "obstruct" signifies direct or indirect opposition or resistance to the lawful discharge of his official duty. * * *'" *Id.,* 134 W.Va. at 360, 59 S.E.2d at 487.

We agree with the state that Jarvis' act of unlawfully fleeing to avoid a lawful arrest illegally hindered a state trooper in the lawful exercise of his official duties. His actions constitute a violation of the statute. As stated in *Johnson,* the statute prohibits any unlawful interference with an officer in the discharge of his official duties. The evidence shows that warrants for Jarvis' arrest had been obtained at the time of his flight and thus the officers were lawfully exercising their official duty to make the arrest. Jarvis had a duty like every other citizen to submit to the lawful arrest and his flight was illegal. His unlawful act hindered or delayed the troopers in the lawful performance of their duties.

We recognize, however, that if his flight had not been illegal, there would not have been a violation of the statute. The statute only reaches conduct that unlawfully hinders, obstructs or opposes an officer in the lawful exercise of his official duty. Courts in applying similar statutes have recognized that a person does not violate the law by doing what he has a lawful right to do, regardless of whether it obstructs or hinders a police officer. For example, a person does not unlawfully hinder an officer by simply questioning the necessity of an arrest for not having a driver's license. *See, e.g., McCook v. State,* 145 Ga.App. 3, 243 S.E.2d 289 (1978); *see also State v. Buck,* 139 Vt. 310, 428 A.2d 1090 (1981).

Our research in the law of other jurisdictions supports our conclusion, although the cases are few and of limited assistance due to varying statutory language. We note that some states have statutes creating a specific offense for fleeing or attempting to elude a police officer by driving a motor vehicle or otherwise. *See, e.g., Alejos v. Texas,* 555 S.W.2d 444 (Tex.Ct.Cr.App. 1977). The California cases hold that flight from an officer seeking to arrest is sufficient to constitute the violation of a statute punishing a person who willfully resists, delays or obstructs a public officer in the discharge of a duty of his office. *See, e.g., In Re Culver,* 69 Cal.2d 898, 73 Cal.Rptr. 393, 447 P.2d 633 (1968); *Annot.,* 44 A.L. R.3rd 1018, 1022–1023 (1972).

In *State v. Merrifield,* 180 Kan. 267, 303 P.2d 155 (1956), the defendant was found guilty of obstructing justice when, after

being told he was under arrest, he went into his house, locked the door and refused to come out and go with the officer. *See also, Tankersley v. State,* 155 Ga.App. 917, 273 S.E.2d 862 (1980); *City of Chicago v. Brown,* 18 Ill.Dec. 395, 61 Ill.App.3d 266, 377 N.E.2d 1031 (1978).

*Jones v. Commonwealth,* 141 Va. 471, 126 S.E. 74 (1925), a prohibition case, is distinguishable because the defendant was seeking to avoid an unlawful search based only on suspicion. Here there is no dispute as to the lawfulness of the arrest.

The trial court thus did not err in refusing to grant a judgment of acquittal.

### III

The trial court also acted properly in refusing to acquit Jarvis of reckless driving. The argument is that the state did not prove beyond a reasonable doubt that Jarvis drove his vehicle in willful or wanton disregard for the safety of persons or property, as required for a conviction of reckless driving under the provisions of *W.Va. Code,* 17C–5–3, because there was no testimony showing the presence of oncoming traffic or as to what Jarvis could see when passing the other vehicles. We emphatically reject this argument.

■ There was ample evidence from which the jury could reasonably conclude that Jarvis was acting in willful, wanton disregard for the safety of others. The evidence when viewed in the light most favorable to the prosecution shows that Jarvis passed two or three cars at a high rate of speed in a blind curve. The highway was clearly marked as being a no-passing zone, and the road did not have a berm. It is fortunate that there were no cars coming in the other direction, but Jarvis cannot take advantage of that fact. The evidence presented a classic jury question on whether Jarvis was acting in wilful, wanton disregard for the safety of others, and they decided the case against him. It is not our function to weigh the evidence. On this record we must affirm.

### IV

■ Jarvis' remaining assignment of error involves a plea bargaining agreement that was entered into after his conviction of the four misdemeanors. The prosecution orally agreed to recommend probation if he would cooperate with the authorities by providing information. He apparently had knowledge of certain unresolved felony offenses committed in the county and the location of certain stolen property.

The facts surrounding this agreement were developed at the sentencing hearing held in August of 1982. Sentencing was originally set for April of 1982 but was delayed to permit Jarvis to supply information. Jarvis said that he had supplied the information, while the prosecutor represented that he had not. The probation department initially recommended probation in the case but after further investigation at the direction of the trial court made an unfavorable recommendation. The probation department apparently changed their recommendation after investigating whether Jarvis had in fact supplied information to the state police.

The trial court judge unequivocally stated that he would not have granted probation in any event. He stated that even before the dispute concerning Jarvis' cooperation he had decided to deny probation based on his record and notwithstanding the initial recommendation of the probation department. In view of these circumstances, we are of the opinion that Jarvis is entitled to no relief in connection with the sentences imposed by the trial court.

The judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.