373 S.E.2d 484

**STATE ex rel. Fred M. WILMOTH**

v.

**Arthur N. GUSTKE, Judge of the Circuit Court of Wood County, and Harry G. Deitzler, Wood County Prosecuting Attorney.**

No. 18357.

Supreme Court of Appeals
of West Virginia.

July 22, 1988.
Dissenting Opinion Oct. 21, 1988.

Lonnie C. Simmons, Ditrapano & Jackson, Charleston, for Fred M. Wilmoth.

Silas B. Taylor, Jill Miles, Asst. Attys. Gen., Charleston, for appellees.

McHUGH, Chief Justice:

This case is before this Court upon a petition for a writ of prohibition against the respondents, the Honorable Arthur N. Gustke, Judge of the Circuit Court of Wood County and Harry G. Deitzler, the Wood County Prosecuting Attorney, to prohibit the scheduled trial of the petitioner, Fred Wilmoth, who is accused of violating *W.Va. Code,* 61–5–17 [1931], the statutory proscription against obstructing a law enforcement officer in the lawful exercise of his or her duty. This Court has before it the petition for appeal and the briefs of counsel.[1]

---

1. Prohibition may be used as a means to test the constitutionality of a statute. *See* syl. pt. 1, *Simms v. Dillon,* 119 W.Va. 284, 193 S.E. 331 (1937), *overruled on other grounds, State Road Commission v. Milam,* 146 W.Va. 368, 120 S.E.2d 254 (1961). In *State ex rel. Daily Mail Publishing Co. v. Smith,* 161 W.Va. 684, 248 S.E.2d 269 (1978), *aff'd,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), this Court prohibited proceedings under a statute which was ultimately found violative of the first amendment to the *United States Constitution.* Because the case now before us involves first amendment

considerations, discussed *infra* in the body of this opinion, and for the reasons hereinafter stated, we find that prohibition is proper in this case.

The statements of fact provided in the briefs of both parties do not differ on any significant point. There is no contention that the appellant used "fighting or insulting words" or physically hindered the officer in any way during their remonstration, discussed *infra* in the body of this opinion. In the interests of judicial economy, we are of the opinion that further proceedings in this case would be unnecessary. *See*

I

On November 29, 1986, a police officer in the city of Vienna, West Virginia, was pursuing a vehicle whose license had expired. The police officer activated the flashing lights on his patrol car and began pursuing the driver. The driver pulled into a shopping center parking lot owned by the petitioner, and the officer followed, parking around the area of the main exit. While the officer was issuing a traffic citation, the petitioner approached the scene, asked the officer to leave his property and requested that the officer issue the citation elsewhere.

The petitioner indicated that he was concerned that the officer may be scaring away customers. The officer assured the petitioner that he would talk with him once he completed issuing the citation. The petitioner responded that he would get somebody to remove the officer from the premises. The officer then told the petitioner that if he persisted that he would be arrested for obstructing an officer. After warning the petitioner to cease, the officer arrested him and charged him with violating *W.Va.Code*, 61-5-17 [1931].

The petitioner was subsequently tried in magistrate court and found guilty of obstructing an officer. He appealed his conviction to the Circuit Court of Wood County, which denied his motion for dismissal of the case.

II

*W.Va.Code*, 61-5-17 [1931], the prohibition against obstructing an officer in the lawful exercise of his or her official duty, provides in pertinent part:

Any person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose, or shall counsel, advise or invite others to hinder, obstruct or oppose any officer in this State (whether civil or military) in the lawful exercise or discharge of his [or her] official duty, shall, for every such offense, be guilty of a misdemeanor[.]

The petitioner contends that enforcement of *W.Va.Code*, 61-5-17 [1931] under the particular facts of this case infringed upon his right to freedom of speech guaranteed by the first amendment to the *United States Constitution*. [2] He further contends that the actions charged in the arrest warrant do not constitute the offense of obstructing an officer as statutorily defined in *W.Va.Code*, 61-5-17 [1931]. We agree.

In *State v. Johnson*, 134 W.Va. 357, 59 S.E.2d 485 (1950), this Court interpreted *W.Va.Code*, 61-5-17 [1931] with particular

*Hinkle v. Black*, 164 W.Va. 112, 118, 262 S.E.2d 744, 748 (1979).

**2.** We emphasize that the petitioner is challenging the unconstitutional application of *W.Va.Code*, 61-5-17 [1931] to him under the facts of this case. Thus, the question of the facial constitutionality of the statute is not now before us.

This approach is consistent with the United States Supreme Court's invocation of the concept of "substantial overbreadth," a criterion developed to avoid striking down a statute on its face simply because it might be applied in an unconstitutional manner. *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 964, 104 S.Ct. 2839, 2851, 81 L.Ed.2d 786, 801 (1984). This concept is appropriate in cases, where, despite some impermissible application, the "remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct[.]" *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 580-81, 93 S.Ct. 2880, 2898, 37 L.Ed.2d 796, 817 (1973). In such

cases, a litigant is required to demonstrate the statute "as applied" to him or her is unconstitutional. *Munson*, 467 U.S. at 965, 104 S.Ct. at 2851, 81 L.Ed.2d at 801.

Recently, we applied the overbreadth doctrine, as opposed to the concept of "substantial overbreadth," in holding that the sweeping language of a challenged statute, *W.Va.Code*, 61-7-1 [1975], infringed on activities guaranteed constitutional protection by the "Right to Keep and Bear Arms Amendment." *State ex rel. City of Princeton v. Buckner*, No. CC972 (W.Va. July 1, 1988). The defect in *W.Va.Code*, 61-7-1 [1975] was that the means chosen to accomplish the State's objective in licensing the carrying of dangerous or deadly weapons impermissibly infringed upon the constitutionally protected right to bear arms for defensive purposes, thereby imposing a direct restriction on that protected right. *Buckner*, slip op. at 10. Thus, the doctrine of "substantial overbreadth" was clearly inapplicable in *Buckner* because *W.Va.Code*, 61-7-1 [1975] provided no core of easily identifiable and constitutionally proscribable conduct that the statute prohibited.

emphasis on the language "forcibly or illegally hinder, obstruct, or oppose" embodied in the statute. This Court rejected the defendant's contention that mere assistance rendered to facilitate a prisoner's escape from the lawful custody of an officer was not an obstruction of that officer in the discharge of his official duties. The Court determined that no such restricted meaning should be given to the word "obstruct" as used in the statute. The Court further held that the words "forcibly or illegally" as used in the statute clearly mean any unlawful interference with the officer in the discharge of his or her official duties, whether or not force is actually present. The Court defined unlawful interference as follows: " 'To "interfere" is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the performance of his legal duty; and to "obstruct" signifies direct or indirect opposition or resistance to the lawful discharge of his official Duty.' " 134 W.Va. at 360, 59 S.E.2d at 487, *quoting State v. Estes,* 185 N.C. 752, 755, 117 S.E. 581, 583 (1923).

More recently, in applying *W.Va.Code,* 61–5–17 [1931], we have held that any person, upon being advised that he is being arrested pursuant to a warrant, who flees in an automobile and thereby avoids immediate arrest, is guilty of violating the statute. Syl., *State v. Jarvis,* 172 W.Va. 706, 310 S.E.2d 467 (1983). Significantly, in *Jarvis,* we observed that "a person does not unlawfully hinder an officer by simply questioning [the arresting officer]." 172 W.Va. at 709, 310 S.E.2d at 470.

Our observation in *Jarvis* is consistent with the general rule that when done in an orderly manner, merely questioning or remonstrating with an officer while he or she is performing his or her duty, does not ordinarily constitute the offense of obstructing an officer. *See, e.g., State v. Avnayim,* 24 Conn.Sup. 7, 8–12, 185 A.2d 295, 297–98 (Super Ct.1962); *McCook v. State,* 145 Ga.App. 3, 5, 243 S.E.2d 289, 291 (1978); *People v. Weathington,* 82 Ill.2d 183, 187, 44 Ill.Dec. 496, 500, 411 N.E.2d 862, 864 (1980); *State v. Leigh,* 278 N.C. 243, 251, 179 S.E.2d 708, 713 (1971); *State, In re Goodman,* 531 P.2d 478, 479 (Utah 1975); 67 C.J.S. *Obstructing Justice* § 7 (1978); *see generally* annotation, *What Constitutes Obstructing or Resisting an Officer, In the Absence of Actual Force,* 44 A.L.R.3d 1018, §§ 6 and 7 (1972).

The petitioner submits that a factual situation similar to the one in the case before us was recently addressed by the Supreme Court of the United States in *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). In *Hill,* two police officers approached and questioned a person who was stopping traffic on a busy street, evidently to allow a vehicle to enter traffic. While the officers were questioning his friend, the defendant began shouting at the officers in an attempt to divert their attention. One of the police officers then asked the defendant if he was trying to interrupt him in his official capacity as a Houston police officer to which the defendant replied yes and suggested to the officers that they pick on someone their own size. The defendant was arrested for "wilfully or intentionally interrupt[ing] a city policeman ... by verbal challenge during an investigation" in violation of a Houston city ordinance.[3]

In *Hill,* the court determined that the first amendment protects a significant amount of verbal criticism and challenge directed at police officers.[4] "The freedom

---

**3.** *Houston, Tex., Municipal Code* § 34–11(a) (1984) provides: "It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest."

Admittedly, the language embodied in *W.Va. Code,* 61–5–17 [1931] is distinguishable from that contained in the Houston ordinance insofar as the ordinance explicitly makes it unlawful to interrupt a police officer in the performance of his or her duty, while our statute contains no such parallel language. Despite this distinction, *Hill* is useful as persuasive precedent. A comparison of the two provisions reveals that both generally prohibit interference with a police officer in the discharge of his or her duties.

**4.** The first amendment to the *United States Constitution* embodies the federal constitutional provision regarding freedom of speech and provides in pertinent part: "Congress shall make no

of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." 482 U.S. at 462–463, 107 S.Ct. at 2510, 96 L.Ed.2d at 412–13. In striking the Houston ordinance as overbroad, the court particularly focused on sweeping language of the provision, which prohibited interfering with a police officer "in any manner" and failed to limit its proscription to "fighting words" or "obscene or opprobrious language."[5] 482 U.S. at 463, 107 S.Ct. at 2510, 96 L.Ed.2d at 412.

Moreover, the record in *Hill* contained ample evidence that the statute had been applied in many instances to persons who were doing nothing more than talking or arguing with the police. The court concluded that the ordinance criminalized a substantial amount of constitutionally protected speech and impermissibly accorded the police unguided discretion in enforcement. 482 U.S. at 467, 107 S.Ct. at 2512, 96 L.Ed.2d at 415.[6]

We agree with the petitioner and find that the United States Supreme Court's decision in *Hill* controls our disposition of the case now before us. Under the facts of this case, the application of *W. Va. Code*, 61–5–17 [1931] is violative of the petitioner's first amendment rights. Clearly, under *Hill*, every person has a first amendment right to question or challenge the authority of a police officer, provided that

fighting words or other opprobrious language is not used. Accordingly, a person, upon witnessing a police officer issuing a traffic citation to a third party on the person's property, who asks the officer, without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance, to leave the premises, does not violate *W. Va. Code*, 61–5–17 [1931], because the person has not illegally hindered an officer of this State in the lawful exercise of his or her duty. To hold otherwise would create first amendment implications which may violate the person's right to freedom of speech. *U.S. Const.* amend. I; *W. Va. Const.* art. III, § 7.

For the foregoing reasons, the writ of prohibition seeking to prevent the petitioner's scheduled trial for allegedly violating *W. Va. Code*, 61–5–17 [1931] is granted.

WRIT GRANTED.

BROTHERTON, Justice, dissenting:

I must dissent from the opinion of the majority which holds that the application of W.Va.Code § 61–5–17 (1931), violates plaintiff's First Amendment right to free speech.

I agree with the majority that every person has a right to question or challenge the authority of a police officer, but with cer-

---

law ... abridging the freedom of speech[.]" Our State *Constitution* contains a parallel provision which reads, in part: "No law abridging the freedom of speech ... shall be passed[.]" *W.Va.Const.* art. III, § 7.

**5.** In *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942), the court defined "insulting or fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." The court recognized therein that the first amendment right to freedom of speech was not absolute and noted that "insulting or fighting words" are not afforded such constitutional protection.

However, the court observed in *Hill* that the "fighting words" exception recognized in *Chaplinsky* may "require a narrower application in cases involving words addressed to a police offi-

cer, because 'a properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to respond belligerently to "fighting words." ' " 482 U.S. at 462, 107 S.Ct. at 2510, 96 L.Ed.2d at 412 (citation omitted).

**6.** For recent cases in state courts following the United States Supreme Court's holding in *Hill,* see *State v. Williams,* 205 Conn. 456, 471, 534 A.2d 230, 238 (1987) (upholding constitutionality of obstruction of justice statute, but interpreting it to exclude situations in which a defendant merely questions a police officer's authority or protests his or her action); *State v. Krawsky,* 417 N.W.2d 687, 689, 691 (Minn.Ct.App.1988) (obstruction of justice statute prohibiting "interfer[ence] with a peace officer while the officer is engaged in the performance of official duties" constitutionally invalid); *review granted* (Minn. Feb. 24, 1988).

tain exceptions.[1] It has long been the law of the land that an individual cannot constitutionally express his First Amendment rights by shouting fire in a crowded theatre.[2] However, in reaching their conclusion, the majority ignores the nature of the challenge in this case, as well as an exception to an individual's right to free speech. I believe this case revolves around an exception to the rule.

The majority relies on the United States Supreme Court decision in *City of Houston v. Hill*, 482 U.S. 450, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), in support of their conclusion. *Hill*, however, can be easily distinguished from the facts at hand. *Hill* dealt with an overbroad ordinance which prohibited any interruption of an officer in the execution of his duty. The Court specifically held the ordinance punished a verbal interruption rather than the core criminal conduct.[3] Justice Brennan, speaking for the majority, struck down the ordinance as facially overbroad and found the ordinance "criminalized" a substantial amount of constitutionally protected speech.[4]

In this case, the plaintiff did not allege, nor did the majority find, that W.Va.Code § 61–5–17 was facially overbroad. Thus, I fail to see the relevance of *Hill* in the majority's analysis or conclusion. In fact, the majority ignores a critical distinction found in *Hill* at footnote 11. After affirming the importance of an individual's freedom to challenge or oppose police action without risk of arrest, the Court observed:

> In any case, today's decision does not leave municipalities powerless to punish physical obstruction of police action. For example, Justice Powell states ...

"that a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." We agree, however, that such conduct might constitutionally be punished under a properly tailored statute, such as a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order or to create a traffic hazard. What a municipality may not do, however, and what Houston has done in this case, is to attempt to punish such conduct by broadly criminalizing speech directed to an officer—in this case by authorizing the police to arrest a person who in any manner verbally interrupts an officer.

(citations omitted). 482 U.S. at 462–463, 107 S.Ct. at 2510, 96 L.Ed.2d at 412–13.

Justice Brennan then noted that:

> Justice Powell also observes that "contentious and abusive" speech can interrupt an officer's investigation, and offers as an example a person who "run(s) beside (an officer pursuing a felon) in a public street shouting and cursing the officer." But what is of concern in that example is not simply contentious speech, but rather the possibility that by shouting and running beside the officer the person may physically obstruct the officer's investigation. Although that person might constitutionally be punished under a tailored statute that forbade individuals from physically obstructing an officer's investigation, he or she may not be punished under a broad statute aimed at speech.

1. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed.2d 1031 (1942). The Court held that the right to freedom of speech was not absolute and noted "insulting or fighting words" are not afforded constitutional protection.

2. *Schenck v. U.S.*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473 (1919).

3. 482 U.S. at 459, 107 S.Ct. at 2508, 96 L.Ed.2d at 410.

4. Justice Brennan observed the Houston ordinance was more sweeping in scope than the ordinances invalidated in their earlier decision of *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), as it prohibited speech in any manner which interrupted an officer. In *Lewis v. City of New Orleans*, the Court vacated as overbroad an ordinance which prohibited an individual from wantonly cursing, reviling or using obscene or opprobrious language against a police officer. In *Hill*, Justice Brennan reported that "[c]ritical to our decision [in *Lewis* ] was the fact that the ordinance 'punishe(d) only spoken words' ..." 482 U.S. at 462–463, 107 S.Ct. at 2509–10, 96 L.Ed.2d at 412.

(citations omitted). 482 U.S. at 462, 107 S.Ct. at 2510, 96 L.Ed.2d at 412–13.

I believe the case at hand falls squarely within the exception identified by both the majority and the dissent in *Hill*. Surely the majority would have to concede this situation is analogous to the examples described in *Hill*, where Justice Brennan concluded an individual could constitutionally be punished under a properly tailored statute which prohibited the obstruction of an officer's investigation.

Unlike the ordinances struck down in *Lewis* and *Hill*, W.Va.Code § 61–5–17 does not punish only spoken words nor does it "criminalize" a substantial amount of constitutionally protected speech. Moreover, at no point did the majority find this statute facially unconstitutional. In prohibiting actions or threats which hinder, obstruct, or oppose an officer in the lawful exercise of his official duty—or that which incites others to do the same—this statute looks remarkably like the "tailored statute" envisioned by the Supreme Court.

Critical to the analysis is Justice Brennan's observation that in the listed examples, the concern was not simply contentious speech, but the possibility the individual would physically obstruct the officer. One must recall that in the facts at hand, the plaintiff threatened to have the officer removed from the premises if he did not stop performing his official duty. Certainly a clear possibility existed that the plaintiff would attempt to make good on his threat. Neither the Supreme Court in *Hill* nor W.Va.Code § 61–5–17 require that physical contact occur before an officer can take action. Yet under the scenario envisioned by the majority, an individual could threaten an officer with varying degrees of obstruction and potential harm without recourse by the officer until the harm is done. I cannot believe this is the result intended by this Court or the legislature. For that reason, I dissent from the reasoning and result of the majority.