483 S.E.2d 84

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**John R. DAVIS, Defendant Below, Appellant.**

No. 23337.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 1996.

Decided Dec. 18, 1996.

Joy M. Cavallo, Assistant Attorney General, Charleston, for Appellee.

Mark W. Welsh, Public Defender, Clarksburg, for Appellant.

PER CURIAM.

This is an appeal [1] by John R. Davis (hereinafter "the Appellant") from a July 10, 1995,

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to

order of the Circuit Court of Harrison County denying the Appellants's motion to set aside the verdict or to grant a new trial. The Appellant was found guilty of obstructing a police officer and sentenced to ten days in the Harrison County Correctional Center and eighty hours of community service. He appeals his conviction to this Court, contending that the lower court misapplied West Virginia Code § 61–5–17 (Supp.1996) regarding obstruction and failed to honor the Appellant's rights to free speech and to keep and bear arms. We affirm the decision of the Circuit Court of Harrison County.

### I.

On January 1, 1995, Harrison County Deputy Sheriff Greg Knight was dispatched to Chicken Farm Hollow in Reynoldsville, Harrison County, West Virginia, to investigate a disturbance. While en route, Deputy Knight received a second call advising him that the disturbance possibly originated at the Appellant's residence and that shots had been fired. Proceeding directly to the Appellant's residence, Deputy Knight was greeted by the Appellant in an intoxicated condition and was invited into the house. The testimony in the lower court established that both the Appellant and his girlfriend, who also resided in the home, had been drinking at a New Year's Eve Party and were engaged in an argument of some nature. According to the testimony of the officer, when questioned about the shots fired, the Appellant responded that he may or may not have discharged his gun and that if he decided to do so, he would discharge his gun "any f——ing place, any f——ing time he chose." The Appellant also pointed to the gun in the corner of his living room and informed Deputy Knight that it was loaded. When Deputy Knight suggested that he take the gun until the next day, the Appellant became increasingly agitated and informed Deputy Knight that he would have to obtain a warrant to take the gun and asserted his right to keep the gun in his home. Concerned with the possibility of escalating the dangerous situation, Deputy Knight backed out of the residence and called for back-up.

Upon the arrival of Deputy Sheriff John Hawkins, the two officers attempted to convince the Appellant to exit the residence. When he came outside, he was arrested and charged with obstruction and assault on Deputy Knight. After a March 15, 1995, bench trial before Magistrate James Terango, the Appellant was found guilty of both obstruction and assault. Upon the de novo trial before the lower court, the Appellant was found not guilty of assault and guilty of obstruction. The lower court denied the Appellant's motion to set aside the verdict or to grant a new trial, and the Appellant appeals to this Court.

### II.

■ Pursuant to syllabus point four of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo."

The Appellant's conviction of obstruction is premised upon West Virginia Code § 61–5–17(a), which provides as follows:

> Any person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose, or shall counsel, advise or invite others to hinder, obstruct or oppose any officer in this state (whether civil or military) in the lawful exercise or discharge of his official duty, shall, for every such offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned not exceeding one year.

■ We have previously noted that not every act of questioning the authority of a police officer constitutes obstruction. In the syllabus of *State ex rel. Wilmoth v. Gustke,*

sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996,

and continuing until further order of this Court.

179 W.Va. 771, 373 S.E.2d 484 (1988), we explained as follows:

> A person, upon witnessing a police officer issuing a traffic citation to a third party on the person's property, who asks the officer, *without the use of fighting or insulting words or other opprobrious language* and without forcible or other illegal hindrance, to leave the premises, does not violate *W.Va.Code,* 61–5–17 [1931], because that person has not illegally hindered an officer of this State in the lawful exercise of his or her duty. To hold otherwise would create first amendment implications which may violate the person's right to freedom of speech. *U.S. Const.* Amend. I; *W.Va. Const.* art. III, § 7.

179 W.Va. at 771, 373 S.E.2d at 484 (emphasis supplied).

■ In *State v. Johnson,* 134 W.Va. 357, 59 S.E.2d 485 (1950), the defendant maintained that his assistance to facilitate a prisoner's escape from the lawful custody of an officer did not constitute obstruction. We concluded that no such restricted meaning should be given to the word "obstruct" as used in the statute and held that the words "forcibly or illegally" as "used in the statute clearly mean any unlawful interference with the officer in the discharge of his official duties, whether or not force be actually present." 134 W.Va. at 360, 59 S.E.2d at 487. " 'To "interfere" is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the performance of his legal duty; and to "obstruct" signifies direct or indirect opposition or resistance to the lawful discharge of his official duty.' " *Id.,* (quoting *State v. Estes,* 185 N.C. 752, 755, 117 S.E. 581, 583 (1923)); *see generally* Wade R. Habeeb, Annotation, *What Constitutes Obstructing or Resisting an Officer, In the Absence of Actual Force,* 44 A.L.R.3d 1018, §§ 6 and 7 (1972).

■ The Appellant in the present case maintains that the lower court misapplied the obstruction statute and that the Appellant's verbal threats and menacing behavior did not constitute "obstruction." However, in the opinion of this Court, the threats, language, and menacing demeanor of the Appellant constitute an example of the very activity to which Wet Virginia Code § 61–5–17(a) was directed. A police officer, charged with keeping the peace and diffusing potentially volatile situations, was dispatched to a location from which shots may have been fired. He encountered an intoxicated individual fighting with his live-in girlfriend with a loaded shotgun in the corner. The individual gestured toward the gun, reminded the officer in a threatening manner that it was loaded, and employed language indicative of both his agitated state and his intention to discharge the gun at any time and any place he chose. This is the type of activity specifically proscribed by West Virginia Code § 61–5–17(a). The Appellant utilized verbal threats and behavior which had the effect of hindering the police investigation of shots allegedly fired from the Appellant's residence.[2] Our decision in *Wilmoth* was specifically based upon the reasoning that interference "without the use of fighting or insulting words or other opprobrious language" did not constitute obstruction. 179 W.Va. at 771. syl. pt. 1, 373 S.E.2d at 484, syl. pt. 1. The actions of the Appellant in this matter do constitute fighting, insulting, and other opprobrious language, and the Appellant is therefore not shielded by the rationale of *Wilmoth.*

■ The Appellant would also have us believe that he was arrested for obstruction simply because he would not surrender his gun and that his constitutional right to bear arms is therefore implicated. However, the crux of his obstruction charge was his overall demeanor and threatening manner, not simply his refusal to give the gun to the officer. In *Harris v. State,* 222 Ga.App. 83, 473 S.E.2d 245 (1996), the Court of Appeals of Georgia encountered a situation in which an officer had been dispatched to a trailer park in response to a complaint of loud music. The officer knocked on the appellant's trailer door several times, and the appellant, highly intoxicated, eventually answered the door,

---

2. The Appellant also contends that because Deputy Knight had not initiated any formalities of investigation such as interviewing witnesses to the alleged disturbance, Deputy Knight had not yet begun the "discharge of his official duty" and consequently there could have been no "obstruction" within the meaning of the statute. That particular attack is also meritless.

addressed the officer with profanity, and then closed the door again. The officer continued to knock, and the appellant yelled "I'll go back here and get my rod in the back and I'll kill all of you son of a bitches." 473 S.E.2d at 246. After the arrival of other officers, the appellant opened the door and had a long metal rod in his hand. He thereafter dropped the rod but continued the profane descriptions of what he planned to do to the police. The police then sprayed him with cayenne pepper spray to subdue him and charged him with obstruction. The Court upheld the obstruction conviction, explaining that "[t]estimony from police officers called to the scene illustrates that appellant verbally threatened the officers and, while holding a weapon, refused to leave the trailer to discuss turning down the stereo." *Id.* at 247.

In *Carter v. State*, 222 Ga.App. 397, 474 S.E.2d 228 (1996), the appellant, having been convicted of misdemeanor obstruction of a law enforcement officer, argued that the conviction could not stand because she had not used violence in the exchange with the officer. The officer had been dispatched to a residence to investigate a possible theft. 474 S.E.2d at 230. The appellant approached the officer, asked him what he was doing there, followed him and the individuals who had reported the theft into a residence, and continued to disrupt the investigation. *Id.* The Georgia court held that, despite the absence of actual violence directed toward the officer, the appellant's conduct satisfied the necessary elements of knowing and wilful obstruction committed while the officer was lawfully discharging his official duties. 474 S.E.2d at 231.

The officer's actions in this matter constituted intervention to prevent potential serious harm through the use of a firearm. Especially where the interests of another resident of the home are at stake, decisive and immediate intercession is necessary to properly conclude the predicament. As our Legislature recognized through the promulgation of West Virginia Code § 48–2A–14 (1996), the interests of household members must be protected, and a law-enforcement officer is given specific authority to arrest an alleged perpetrator for an offense in certain situations. That section provides, in pertinent part, as follows:

[W]here a family or household member is alleged to have committed a violation of the provisions of subsection (a) or (b), section twenty-eight, article two, chapter sixty-one of this code [§ 61–2–28(a) or (b)] against another family or household member, in addition to any other authority to arrest granted by this code, a law-enforcement officer has authority to arrest the alleged perpetrator for said offense when:

(1) The law-enforcement officer has observed credible corroborative evidence that the offense has occurred; and

(2) The law-enforcement officer has received, from the victim or a witness, a verbal or written allegation of facts constituting a violation of section twenty-eight, article two, chapter sixty-one of this code; or

(3) The law-enforcement officer has observed credible evidence that the accused committed the offense.

(b) Credible corroborative evidence means evidence that is worthy of belief and corresponds with the allegations of one or more elements of the offense and may include, but not limited to, the following conditions:

(1) *Condition of the alleged victim.*— One or more contusions, scratches, cuts, abrasions, swellings; missing hair; torn clothing or clothing in disarray consistent with a struggle; observable difficulty in breathing or breathlessness consistent with the effects of choking or a body blow; observable difficulty in movement consistent with the effects of a body blow or other unlawful physical contact.

(2) *Condition of the accused.*—Physical injury or other conditions similar to those set out for the condition of the victim which are consistent with the alleged offense or alleged acts of self-defense by the victim.

(3) *Condition of the scene.*—Damaged premises or furnishings; disarray or misplaced objects consistent with the effects of a struggle.

(4) *Other conditions.*—Statements by the accused admitting one or more elements of the offense; **threats made by the accused in the presence of an officer;** audible evidence of a disturbance

heard by the dispatcher or other agent receiving the request for police assistance; written statements by witnesses. W. Va.Code § 48–2A–14 (emphasis supplied).

Although the officer here had not observed evidence that an offense had occurred, the report of gunfire together with the threats from the Appellant, the conduct of the Appellant and the presence of a firearm, was sufficient to warrant further investigation to determine whether a domestic violence offense had been committed or whether the other member of the household was in danger.[3]

Reviewing the lower court's factual findings on a clearly erroneous basis, we do not deem those findings to be in error. *Burgess*, 196 W.Va. at 187, 469 S.E.2d at 123. Thus, in our de novo review of the lower court's legal analysis, we are bound by the facts as determined by the lower court. We affirm the decision of the lower court in every respect.

Affirmed.

RECHT, J., sitting by temporary assignment.

---

**3.** Furthermore, West Virginia Code § 48–2A–9 (1996) establishes a whole panoply of obligations on the part of law enforcement officers responding to possible incidents of domestic violence. The officer in the instant case had a clear obligation to ascertain more information on the situation and possibly to inform the Appellant's live-in companion of her rights to protection. Given the presence of this individual in what was also her home, it would have been irresponsible of the officer merely to depart without further inquiry or action.