663 S.E.2d 606

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Wanda CARNEY, Defendant Below, Appellant.**

**State of West Virginia, Plaintiff Below, Appellee**

v.

**Betty Jarvis, Defendant Below, Appellant.**

**No. 33522.**

Supreme Court of Appeals of West Virginia.

Submitted March 12, 2008.

Decided April 25, 2008.

**154**

C. Michael Sparks, Mingo County Prosecuting Attorney's Office, Williamson, WV, for Appellee.

Lonnie C. Simmons, DiTrapano, Barrett & DiPiero, PLLC, Michael T. Clifford, Charleston, WV, for Appellants.

PER CURIAM:

Appellants Wanda Carney and Betty Jarvis seek to have this Court set aside their convictions for one count each of obstructing a police officer and conspiracy to obstruct a police officer on grounds that insufficient evidence was adduced at trial to sustain the convictions. While the obstruction statute under which they were convicted[1] requires conduct that is either forcible or illegal which operates to hinder or obstruct the official acts of a police officer, Appellants argue that none of the acts they were accused of committing were accomplished with force or were illegal in nature. In addition, Appellants argue that none of the acts the State relied upon to secure the convictions at issue were directed at or towards a police officer.

Upon our review of this matter, we conclude that the evidence upon which the State relied to secure convictions against Appellants for obstructing a police officer does not meet the elements required for the statutory offense. Accordingly, we reverse the decision of the lower court to sustain the convictions.

### I. Factual and Procedural Background

In 2004, the West Virginia State Police were conducting a major drug enforcement investigation in the Matewan area of Mingo County. In connection with this investigation, Carla Collins became a cooperative witness for the police.[2] Following the disappearance of Ms. Collins in April 2005, the police began an extensive search which eventually resulted in the discovery of her body in a makeshift grave near an abandoned trailer.[3] Through the ensuing investigation into her death, it was later determined that Valerie Friend murdered Ms. Collins on April 16, 2005, at the direction of George "Porgie" Lecco.[4]

While the State initially filed charges in connection with the murder of Ms. Collins, those charges were dismissed and the federal government charged the following six individuals with various crimes in connection with the murder: George Lecco, Valerie Friend, Patricia Burton, Walter Harmon, Charles Burton, and Jake Hatfield. One of the individuals accused of involvement in the murder of Ms. Collins—Walter Harmon—was represented by Michael T. Clifford. Mr. Clifford employed Appellant Wanda Carney as an investigator. Appellant Betty Jarvis, an aunt of Mr. Harmon, offered to assist Mr. Clifford and Ms. Carney in connection with providing a defense for her nephew.

As part of Ms. Carney's investigation on Mr. Harmon's behalf,[5] Ms. Carney spoke to

---

**1.** W.Va.Code § 61–5–17(a) (2001) (Repl.Vol. 2005).

**2.** In February 2005, the police raided a business establishment known as Pizza Plus that was owned by George Lecco. Both drugs and money were recovered during the raid. Because he agreed to assist the police, Mr. Lecco was not arrested. As part of his cooperation, Mr. Lecco introduced the police to Carla Collins. Later, when he became convinced that she was supplying the police with inculpatory information about

his cocaine trafficking, Mr. Lecco directed that Ms. Collins be killed.

**3.** Her body was discovered on June 17, 2005.

**4.** *See supra* note 2.

**5.** During the course of investigations she conducted on Mr. Harmon's behalf, Ms. Carney interviewed from fifty to seventy different individuals in Mingo County.

Carmella Blankenship and Valerie Friend. Both women [6] told Ms. Carney that Mr. Harmon was not present at the murder of Ms. Collins.[7] Two additional leads which came to light through the interviews conducted by Ms. Carney were that the police were allegedly involved in the drug trafficking under investigation and that State Trooper Nelson was rumored to have had a sexual relationship with the murder victim—Ms. Collins.

Claiming that Appellants had hindered their investigation into the murder of Ms. Collins by deceiving and intimidating a material witness, Alola Boseman, with false and defamatory statements about lead investigators First Sergeant D.M. Nelson, Trooper First Class A.S. Perdue, and First Lieutenant C.E. Akers, the State filed charges against Ms. Carney and Ms. Jarvis for obstructing a police officer and conspiracy to obstruct a police officer. As additional grounds for the indictment that was issued against Appellants on grounds of obstruction, the State alleged that they temporarily relocated a material witness—Carmella Blankenship—and that they unlawfully entered the residence where Valerie Friend had been living whereupon they removed and concealed certain evidentiary items.

On September 8, 2006, a jury returned a verdict of guilty against Appellants on both of the charges: obstruction and conspiracy to commit obstruction.[8] By order entered on October 26, 2006, the trial court sentenced Appellants to a definite term of one year of confinement at the Southwest Regional Jail for each of the two charges, to be served concurrently. Crediting Appellants for forty-five days of home confinement already served, the trial court suspended the jail sentences and placed Appellants on probation for a term of three years. Under the terms of their probation, Appellants were required to serve a total of 120 days of electronic home confinement (60 days for each of the two offenses for which they were convicted); fulfill 200 hours of community service; and complete a higher education class in criminal justice/procedure.

Through this appeal, Appellants seek a reversal of their respective convictions for obstruction of a police officer and conspiracy to commit obstruction.[9]

## II. Standard of Review

■ Because Appellants assert that the facts of this case are insufficient to support their convictions as a matter of law, the standard of review to be applied is whether the evidence admitted at trial was sufficient to sustain the convictions. As we held in syllabus point one of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

In a recent case involving the offense of obstructing a police officer, this Court observed: "It is a fundamental principle '[i]n a criminal prosecution, [that] the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged...." *State v. Srnsky*, 213 W.Va. 412, 417, 582 S.E.2d 859, 864 (2003).

---

6. Valerie Friend, Patricia Burton, and Carmella Blankenship were present when Ms. Collins was murdered.

7. As a result of this development, the murder charges were dismissed against Mr. Harmon. He did, however, enter a plea of guilt in connection with having burned the abandoned trailer in which Ms. Collins was murdered, destroying evidence, and digging the makeshift grave in which her body was discovered.

8. The conspiracy conviction was obtained under West Virginia Code § 61–10–31 (1971) (Repl.Vol. 2005).

9. Before trial, Appellants filed motions to dismiss the respective indictments issued against them and after trial they filed motions seeking judgments of acquittal. These motions were denied in the first instance and again when raised post trial.

With these standards in mind, we proceed to review this matter to determine whether the lower court committed error in refusing to set aside the convictions at issue.

## III. Discussion

■ Appellants contend that the State failed to establish the material elements of the offense of obstructing a police officer. *See* W.Va.Code § 61–5–17(a). As Appellants observe, a conviction under West Virginia Code § 61–5–17(a) requires proof that the actions alleged to have hindered or obstructed a police officer were either forcible or illegal. The statutory provision at issue provides that:

> Any person who by threats, menaces, acts or otherwise, *forcibly or illegally hinders or obstructs*, or attempts to hinder or obstruct, any law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars or confined in the county or regional jail not more than one year, or both.

*Id.* (emphasis supplied).

The evidence the State relied upon initially to obtain an indictment [10] and later to convince the jury that Appellants were guilty of obstruction was that they had hindered the police investigation into the Collins' murder by removing Ms. Blankenship from Mingo County and delaying a police interview; that Appellants made derogatory remarks about the police to Ms. Boseman that affected her ability to trust them; and that Appellants committed trespass and removed certain items having relevance to this case from the house where Ms. Friend resided prior to the murder. Before we examine these evidentiary items to determine whether such conduct

supports the statutory offense of obstructing a police officer, we find it useful to review those cases in which we have previously applied West Virginia Code § 61–5–17.

In *State v. Johnson,* 134 W.Va. 357, 59 S.E.2d 485 (1950), this Court examined the statutory terms "forcibly or illegally" and stated that such terms as "used in the statute clearly mean any unlawful interference with the officer in the discharge of his official duties, whether or not force be actually present." *Id.* at 360, 59 S.E.2d at 487. In *Johnson,* we considered whether an individual who assists a prisoner in attempting to escape from the lawful custody of a police officer has committed the offense of obstruction under West Virginia Code § 61–5–17. In rejecting the need for the use of force [11] or a specific act directed against the police officer, we explained that the key to the obstruction offense was the "direct interference with the officer in the discharge of his official duties." 134 W.Va. at 360, 59 S.E.2d at 487.

As we explained in *State v. Jarvis,* 172 W.Va. 706, 310 S.E.2d 467 (1983), the key to determining whether conduct effected without force constitutes the offense of obstruction under West Virginia Code § 61–5–17 is whether the conduct at issue is illegal. Addressing whether the defendant's act of fleeing after the police informed him that he was under arrest qualified as obstruction, we elucidated:

> [I]f his flight had not been illegal, there would not have been a violation of the statute. *The statute only reaches conduct that unlawfully hinders, obstructs or opposes an officer in the lawful exercise of his official duty.* Courts in applying similar statutes have recognized that *a person does not violate the law by doing what he*

10. The grounds asserted in the indictment to support the charge of obstruction were "taking and concealing evidentiary items, making defamatory accusations against law enforcement officers and otherwise interfering with the Carla Collins murder investigation, against the peace and dignity of the State of West Virginia and in violation of West Virginia Code § 61–5–17(a)."

11. Because there are no allegations that Appellants used force in connection with the conduct alleged to be obstructive, we do not discuss those

cases brought under West Virginia Code § 61–5–17 in which force was used against a police officer. *See, e.g., State v. Phillips,* 205 W.Va. 673, 520 S.E.2d 670 (1999) (affirming conviction for obstructing police officer where defendant took forcible actions against officer working as security guard); *State v. Holdren,* 170 W.Va. 355, 294 S.E.2d 159 (1982) (upholding obstruction conviction where defendant spat on patrol car and physically assaulted police officer).

*has a lawful right to do, regardless of whether it obstructs or hinders a police officer.*

*Id.* at 709, 310 S.E.2d at 470 (emphasis supplied).

■ Where force is not involved to effect an obstruction, the State contends that the resulting obstruction itself is sufficient to establish the illegality required by West Virginia Code § 61-5-17. This argument fails because, as this Court held in *Wilmoth v. Gustke,* 179 W.Va. 771, 373 S.E.2d 484 (1988), lawful conduct is not sufficient to establish the statutory offense at issue. In that case, the defendant owner of the Parkersburg Mall asked a law enforcement officer to leave the mall premises because the officer's issuance of a traffic citation to a third party was congesting traffic. *Id.* at 772, 373 S.E.2d at 485. In overturning the obstruction conviction that resulted from the mall owner's request, we held:

A person upon witnessing a police officer issuing a traffic citation to a third party on the person's property, who asks the officer, without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance, to leave the premises, does not violate *W. Va.Code,* 61-5-17 [1931], because that person has not illegally hindered an officer of this State in the lawful exercise of his or her duty. To hold otherwise would create first amendment implications which may violate the person's right to freedom of speech, *U.S. Const.* amend. I; *W. Va. Const.* art. III, § 7.

*Wilmoth,* 179 W.Va. at 771, 373 S.E.2d at 484, syllabus.

■ After deciding in *Wilmoth* that lawful speech will not support an obstruction charge, we later examined whether silence in response to police questioning can amount to the statutory offense at issue. In *Srnsky,* we held that the mere refusal to identify oneself to a law enforcement officer does not constitute obstruction under West Virginia Code § 61-5-17(a). 213 W.Va. at 421, 582 S.E.2d

at 868. Only when such silence occurs after the police officer has indicated why the individual's name is being sought in relation to official police duties or in connection with an express statutory directive can non-speech amount to the offense of obstruction set forth in West Virginia Code § 61-5-17(a). *See Srnsky,* 213 W.Va. at 421, 582 S.E.2d at 868 and syl. pt. 4.

■ Having set forth the parameters of what qualifies as a statutory obstruction—forcible or illegal conduct that interferes with a police officer's[12] discharge of official duties—we proceed to examine whether the conduct relied upon by the State to secure convictions against Appellants fell within the statutory elements of West Virginia Code § 61-5-17(a). The first category of evidence relied upon by the State was that Appellants had effected the temporary removal of a witness—Ms. Blankenship—from Mingo County. Acknowledging that Ms. Blankenship cooperated with the police a few days later than originally scheduled, the State nonetheless insists that Appellants hindered the police investigation by encouraging Ms. Blankenship to come to Charleston for a few days.

In explanation of their actions, Appellants testified that after interviewing Ms. Blankenship, they offered to provide a very frightened individual shelter outside of Mingo County. After taking her to a hotel in Charleston, they notified the authorities as to her location.[13] There was no evidence adduced at trial that the temporary removal of Ms. Blankenship from Mingo County was for the purpose of preventing her from speaking to the police. And, as mentioned above, Ms. Blankenship did in fact meet with the police upon her return to Mingo County several days later.

The fact that the police were allegedly hindered in their investigation by the delay of a matter of days in conducting an interview of Ms. Blankenship does not constitute the type of conduct that is typically viewed

12. The statute includes other law enforcement officials besides police officers. *See* W.Va.Code § 61-5-17(a).

13. Ms. Blankenship may have stayed at the home of Appellant Jarvis the first night before she checked into a motel.

as obstruction for purposes of West Virginia Code § 61–5–17(a). First and foremost, there was no illegality as to the physical act of removing Ms. Blankenship from the county as there was no court order requiring her to remain in Mingo County. There is also no evidence that Appellants were seeking to hinder or obstruct the police in their investigation through their relocation of Ms. Blankenship. Consequently, we do not view the evidence concerning Appellants' role in the short-term unavailability of Ms. Blankenship for interviewing purposes as sufficient to sustain a conviction under West Virginia Code § 61–5–17(a).

■ The second type of evidence the State relied upon to prove its obstruction case involved certain pejorative statements about the police that Appellants allegedly made to another potential witness—Ms. Boseman.[14] With regard to the statements allegedly made by Appellant Carney, Ms. Boseman testified that Ms. Carney told her she might be killed by the police;[15] that Troopers Nelson, Perdue and Akers had been sexually intimate with Ms. Collins, and that, consequently, these same troopers were involved in attempting to cover up the Collins' murder; and that Trooper Nelson had impregnated Ms. Collins.[16] As to statements allegedly made by Appellant Jarvis, Ms. Boseman stated that she had indicated that Trooper Nelson was trying to cover up some of the facts of the Collins' murder because he was sexually involved with the victim; that she had taken Ms. Blankenship into her own home to protect her from the police; and

that she had offered to similarly allow Ms. Boseman to stay with her in her home.[17]

As a consequence of these statements allegedly made by Appellants, the State complained that they had to win back the trust of Ms. Boseman. The investigating officers testified that they had to keep reassuring Ms. Boseman that they were not criminals and that she could trust them. Despite this contention, a review of the record demonstrates that Ms. Boseman's communications with Appellants did not deter her willingness to cooperate with law enforcement authorities in connection with the Collins' murder investigation.[18]

■ Challenging the State's reliance on the statements as proof of obstruction, Appellants argue that the speech at issue falls within the protections of the First Amendment. As we discussed in *Wilmoth*, constitutionally protected free speech cannot be relied upon as a basis for establishing the offense of obstruction. 179 W.Va. at 774, 373 S.E.2d at 487. "[A] person does not violate the law by doing what he has a lawful right to do." *Jarvis*, 172 W.Va. at 709, 310 S.E.2d at 470. And, as we made clear in *Jarvis*, not every hindrance to a police investigation rises to the level of a colorable offense under West Virginia Code § 61–5–17(a).

Because Ms. Boseman continued to cooperate with law enforcement officials[19] after having spoken with Appellants, we cannot conclude that the statements attributed to Appellants served to obstruct or hinder the investigation of the Collins' murder. Accord-

---

14. Ms. Boseman told Trooper Adkins that she introduced Mr. Lecco to his cocaine connection in Columbus, Ohio.

15. Appellant Carney denies that she made any such statement.

16. Appellants point out that when they arrived in Mingo County the rumors regarding police misconduct were openly being discussed throughout the county. The existence of these rumors was confirmed through the testimony of Trooper Akers, who further indicated that Ms. Collins had been the source of one particular rumor regarding acts of sexual impropriety involving law enforcement.

17. Ms. Boseman did not take Appellant Jarvis up on this offer.

18. Trooper Akers testified that Ms. Boseman gave statements to the police on March 24, April 27, May 6, 10, 20, 26, and June 17, 2005. At no point in any of these statements was there any reference to either of the Appellants. Appellant Carney believes she only spoke to Ms. Boseman twice, the first time occurring on July 15, 2005. After being offered immunity from state prosecution, Ms. Boseman gave yet another statement to the police on August 18, 2005; that statement contains no reference to Appellants.

19. As part of a deal she made with the federal government, Ms. Boseman was placed in the witness protection program.

ing to the testimony of Trooper Akers, Ms. Boseman told him that Appellant Carney never asked Ms. Boseman not to talk to the police. Given the protected nature of the speech involved, as well as the clear lack of any showing that such speech served to statutorily hinder the investigation at issue, we do not find the evidence of the statements Appellants allegedly made to Ms. Boseman sufficient to establish the offense of obstruction under West Virginia Code § 61–5–17(a).

The final category of evidence that the State relied upon to establish its case of obstruction was an alleged unlawful entry into the house where Ms. Friend had been residing prior to the Collins' murder and the removal and concealment of items from that residence. The State argued that the items removed—a map, film, and film canisters—were tainted and had no value upon their removal from the house.

As to the unlawful entry, Appellants established that the entry in question was not illegal as the owner of the house, Mr. Burton, admitted Appellant Jarvis [20] to the house. After being admitted to the house, Appellant Jarvis testified that she removed a Bible; two pieces of paper from the internet about witchcraft; two cameras; and two film canisters. These items, as confirmed by the testimony of Trooper Nelson, were turned over to the United States Attorney's office by Mr. Clifford. Confirming that the removed items had no significance to the Collins' murder, Trooper Nelson surmised that the film, which turned out to be blank,[21] was what the State might have been interested in examining. As Trooper Perdue made clear, however, there was no evidence that either of the Appellants had tampered in any way with the materials removed from the house.

Trooper Nelson provided the only potential connection of the materials removed from the house to the murder investigation. He testified that among the items removed was a map with directions from the Matewan area to the Belfry area where a shovel related to the case was ultimately discovered. Appellant Carney denied that she removed any such map from the house. Even assuming, *arguendo,* that the map was among the items removed from the house, Mr. Burton's house was not cordoned off as part of any police investigation; the police had never searched Mr. Burton's house; and they never had probable cause to obtain a search warrant for the house. Consequently, the removal of the items in issue, which were obtained through lawful entry and then provided to the authorities, does not constitute evidence sufficient to sustain a conviction for obstruction under West Virginia Code § 61–5–17(a).

Having concluded that the State failed to introduce evidence upon which a jury could properly find Appellants guilty of obstructing a police officer in his official capacity in violation of West Virginia Code § 61–5–17(a), we conclude that the convictions must be reversed. Because the conspiracy convictions were predicated on the offense of obstructing a police officer,[22] those convictions must also be reversed given our conclusion that the obstruction convictions are not sustainable. Accordingly, the orders of the Circuit Court of Mingo County sentencing Appellants in connection with the obstruction and conspiracy to commit obstruction of a police officer are hereby reversed.

Reversed.

---

20. Appellant Carney did not enter the house.

21. Part of what was turned over to the U.S. Attorney's Office was an envelope from a film development company, which noted a charge of zero on the outside, indicating that no photographs were developed from the film.

22. The conspiracy charge and conviction was pursuant to West Virginia Code § 61–10–31, which establishes an offense, when "[t]wo or more persons conspire ... to commit any offense against the State ... if ... one or more such persons does any act to effect the object of the conspiracy."