Rodney YOUNG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 50A03–9304–CR–140.

Court of Appeals of Indiana,
Third District.

Dec. 16, 1993.

Tom A. Black, Plymouth, for appellant-defendant.

Pamela Carter, Atty. Gen. of Indiana, Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Rodney Young appeals from his conviction for resisting law enforcement, a Class D felony (Cause No. 50D01–9205–CF–45), and from the revocation of his probation (Cause No. 50D01–9101–CF–01).

On July 18, 1991, Young pleaded guilty to auto theft, a Class D felony. On January 31, 1992, the court accepted Young's plea and sentenced him to three years' imprisonment. Young was given credit for 90 days and the remaining 275 days were suspended. Young was placed on probation for two and one-half years.

On May 16, 1992, officers of the Breman Police Department were summoned to an apartment building with a report that Young was walking in and out of the building with a shotgun. When officers approached the building, Young came outside and denied possession of a gun; Young claimed that his neighbors had mistaken his fishing pole for a shotgun. One officer followed Young inside the building to verify his claim, but Young shut and locked the door in front of the officer.

Young, who was still on probation at the time, eventually allowed the officers to enter the apartment but denied having a shotgun. A dispatch alerted the officers that the weapon may be in another apartment. Officer Keith Fraine stayed with Young while other officers obtained consent to search the other apartment. Before the officers reached the other apartment, Young pulled a shotgun from behind his television set and placed the barrel of the gun under his chin. The officers left the apartment and took cover outside the building. Chief of the Breman Police Department, James Brown, repeatedly ordered Young to remove the gun. Young refused and stated that he wanted to die and that the police should have killed him the last time. Young had made earlier suicide attempts. With the gun still pointed to his chin, Young began approaching the officers. Young informed the officers that he was going to leave. Young, still with the gun pointed to his chin, leaned through the window of his car and started the vehicle. He then opened the door and slid inside the car, without altering the position of the gun. As Young proceeded to back away, officers shot out the tires and into the passenger side door of the car. Officer Charles Cherry testified that upon entering the vehicle Young had the shotgun under his chin. However, as Young was backing up the vehicle, the shotgun was pointed in the officer's direction. Officer Cherry fired a shot into the door of the vehicle, striking Young. After Young's vehicle came to a halt, Young exited the vehicle.

Thereafter, Young's parents arrived while Young was outside the building. Young's father attempted to remove the shotgun from his son. Young reacted violently and fired a shot into the air. Young

then ran back into the apartment, and as he dove through the screen door, another shot went off inside the apartment building.

Upon Young's request, a counselor and Young's pastor were called. After consulting with his pastor, Young relinquished his weapon and was arrested. The entire incident involved approximately 30 police officers and lasted approximately 3 hours.

On May 22, 1992, an information was filed against Young in three counts: Count I, criminal recklessness, a Class D felony; Count II, resisting law enforcement, a Class D felony; and Count III, intimidation, a Class C felony. On November 30, 1992, a jury returned a guilty verdict as to Count II, resisting law enforcement, a Class D felony. The jury found Young not guilty of Counts I and III. Young was sentenced to one and one-half years of imprisonment.

Based upon the charges filed against Young on May 22, 1992, the State filed a motion to revoke Young's probation. Hearing on the motion to revoke probation was held on December 2, 1992, which resulted in the revocation of his probation. Young now brings this consolidated appeal challenging his conviction for resisting law enforcement and the revocation of his probation based upon this conviction.[1]

■ Young contends that there is insufficient evidence to sustain his conviction for resisting law enforcement. In reviewing a sufficiency claim, this Court looks only to the probative evidence and the inferences reasonably drawn therefrom, favoring the verdict to see whether there was evidence to support a finding of guilt beyond a reasonable doubt; this Court will not reweigh the evidence or judge the witnesses' credibility. *Clark v. State* (1990), Ind., 562 N.E.2d 11, 16, *cert. denied,* — U.S. —, 112 S.Ct. 425, 116 L.Ed.2d 445; *McCaffrey v. State* (1992), Ind.App., 605 N.E.2d 241, 242–243. The verdict will not be reversed

if there is substantial evidence of probative value to support the conclusion of the jury. *Id.*

Resisting law enforcement is defined in IND.CODE § 35–44–3–3 as follows:

"(a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer; ...

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

(b) the offense under subsection (a) is a:

(1) Class D felony if, while committing it, the person draws or uses a deadly weapon[.] ..."

IND.CODE § 35–44–3–3(a)(1) and (b)(1) (1988 Ed.).

■ As defined by the statute, the use of force is an essential element of resisting law enforcement. *Spangler v. State* (1993), Ind., 607 N.E.2d 720, 723; *Braster v. State* (1992), Ind.App., 596 N.E.2d 278, 280; *McCaffrey,* 605 N.E.2d at 243. Therefore, the State must show that Young either forcibly resisted, forcibly obstructed, or forcibly interfered with a law enforcement officer engaged in the execution of his duties. *See Spangler,* 607 N.E.2d at 723; *McCaffrey,* 605 N.E.2d at 243.

As recently defined by the Indiana Supreme Court, "one "forcibly resists" law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Spangler,* 607 N.E.2d at 723. Therefore, in *Spangler,* there was insufficient evidence to support a finding that the defendant had acted forcibly, absent any evidence of strength, power, or violence, or any movement or threatening gesture di-

---

1. This Court's resolution of the first issue relating to Young's conviction for resisting law enforcement, makes it unnecessary to address the issue of the validity of the revocation of Young's probation which was based upon conviction of resisting law enforcement, a Class D felony.

rected toward the law enforcement official, when the defendant merely disconnected the telephone with the police and refused to accept service of process in person by walking away from the officer. *Id.*

■ In the present case, unlike *Spangler,* the evidence is sufficient to support a finding that Young acted forcibly. The evidence most favorable to the judgment reveals Young did not merely refuse to comply with the officers' repeated demands to put down his weapon. Young not only threatened to kill himself, he approached the officers with a loaded weapon. When an attempt was made to unarm Young, he fired the shotgun in the direction of the officers. The officers were required to discharge their weapons to prevent Young from leaving. Additionally, there was testimony that when Young was in his vehicle he pointed the shotgun at Officer Cherry.

■ Young further contends that the officers were not lawfully engaged in the execution of their duties as officers at the time. When a police officer takes it upon himself to enforce the law in order to maintain peace and order for the benefit of the public, the officer is performing official duties as a police officer. *See Nieto v. State* (1986), Ind.App., 499 N.E.2d 280, 282; *see also* IND.CODE § 36-8-3-6(c)(4) (1988 Ed.). Young does not dispute the fact that his actions were dangerous or potentially harmful. Here, the officers had a report from a neighbor that Young was walking in and out of an apartment, in a residential area, approximately a half of a block north of the downtown business district. Despite his contentions otherwise, when Young grabbed the gun from behind the television set, his actions became a danger not only to himself but also to the other occupants in the building and to the police officers. Moreover, Young did discharge the weapon and at one point in time it was pointed in the direction of an officer. Under these circumstance, the jury could reasonably conclude that the officers were engaged in the execution of their duties as officers at

the time. The evidence is sufficient to support the finding that Young committed resisting law enforcement.

Young concedes if there is sufficient evidence to sustain his conviction for resisting law enforcement, the revocation of his probation is valid. *See e.g. Hoffa v. State* (1977), 267 Ind. 133, 135, 368 N.E.2d 250, 252 (if conviction precedes revocation hearing, conviction is prima facie evidence and will alone support revocation). Hence, we need not address this issue. The judgments of the trial courts are affirmed.

Affirmed.

GARRARD and CHEZEM, JJ., concur.