520 S.E.2d 670

**STATE of West Virginia, Appellee,**

v.

**Donna PHILLIPS, Appellant.**

**No. 25811.**

Supreme Court of Appeals of
West Virginia.

Submitted May 11, 1999.

Decided July 14, 1999.

---

674

**676**

Dreama D. Sinkkanen, Esq., Assistant Public Defender, Bridgeport, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Leah Macia, Esq., Assistant Attorney General, Attorneys for Appellee.

WORKMAN, Justice:

This is an appeal by Appellant, defendant below, Donna Phillips (hereinafter "Appellant"), from her conviction in the Magistrate Court of Harrison County, affirmed on appeal in the Circuit Court of Harrison County, on one count of disorderly conduct, in violation of West Virginia Code § 61–6–1b(a) (1997); one count of assault on a police officer, in violation of West Virginia Code § 61–2–10b(d) (1997); and one count of obstructing a police officer, in violation of West Virginia Code § 61–5–17(a) (1997). Appellant contends that the statutes defining the charges against her require that the place officer be acting in his lawful, official capacity at the time of the alleged offenses, and that, in this case, the officer in question was not acting in his lawful, official capacity. Appellant also contends that the magistrate court erred in refusing to give certain of her proposed jury instructions. Because we find that at the time of the offenses at issue in this case, the officer in question was acting in his lawful, official capacity, and that the magistrate court did not err in refusing to give certain jury instructions, we affirm the order of the circuit court affirming the convictions.

## I. Background Facts

Very late in the evening of December 20, 1997, Appellant, her husband, and her three children went to the Clarksburg, West Virginia, Wal–Mart for Christmas shopping. Before the group began shopping, Appellant's husband, Mr. Phillips, went to the manager of the Wal–Mart in order to get approval to cash a payroll check. After shopping for a few hours, the Phillipses approached a cashier in order to pay for their purchases with the payroll check. At that time, they were informed by the cashier that they did not have enough purchases to qualify for the cashing of the payroll check. Wal–Mart requires that the purchases total at least one-third of the check. After shopping for more items, the Phillipses returned to the cashier, Karen Duke, and presented the payroll check as payment for their purchases. Ms. Duke advised them that identification was necessary and the same was provided by Mr. Phillips. Unfortunately, the cash register would not accept Mr. Phillips payroll check. Apparently, the machine was having difficulty processing Mr. Phillips' driver's license. Appellant became very upset and loudly told the cashier that the "lady at the service desk already said they would cash the damn check."

Appellant continued to argue with the cashier, who then called over the manager. The manager, Roseanna McCauley, again explained to the Phillipses that the register would not accept the payroll check. Appellant remained upset and continued to complain loudly and use profanity. The manager then signaled for Curtis Dytzel, an off-duty Clarksburg police officer working in his official police officer's uniform as a privately-paid security guard for Wal–Mart, to come over to the register. Officer Dytzel approached the situation and allegedly asked Appellant, "What the hell is going on here?" Thereafter an altercation ensued between Appellant, Officer Dytzel, and Appellant's fifteen-year-old son. The testimony regarding this incident is contradictory. Officer Dytzel contends that Appellant repeatedly tried to hit him and that when he grabbed her arm, her son jumped on his back. Appellant contends that she only took a swing at Officer Dytzel because he was grabbing her son's arm and hurting him, even after she told him to let go of her son.[1]

Officer Dytzel asked the manager to call 911 and then escorted Appellant and her son to a substation located in the Wal–Mart store, with the intent to place Appellant under arrest. Appellant contends that she asked Officer Dytzel if she could get her cane, but he would not allow it.[2] Allegedly, Appellant felt a seizure beginning and tried to tell Officer Dytzel that she was about to have a seizure, as did her husband. They both contend that Officer Dytzel told them to sit down and shut up. Two other on-duty officers arrived on the scene and handcuffed Appellant. The record is unclear whether she was placed under arrest at that time or if she had been previously placed under arrest by Officer Dytzel. Appellant then began to have a seizure on the floor of the substation. One of the on-duty officers called for an ambulance and Appellant was taken to United Hospital in Clarksburg. On her release she was transferred to the Harrison County Correctional Center and charged with disor-derly conduct, obstructing an officer and assault on a police officer.

Prior to her trial in magistrate court, Appellant moved for the State to specify which officer she allegedly assaulted. In response to this motion, the State indicated Officer Dytzel. At the close of the State's case-in-chief, Appellant moved for a directed verdict and was denied. At the close of all the evidence, Appellant renewed her motion and it was again denied. On March 10, 1998, Appellant was found guilty by a jury of all three charges. At the sentencing hearing, Appellant moved to set aside the verdict, enter a judgment of acquittal or grant a new trial. These motions were denied and the court sentenced Appellant to twenty days in jail and a $100.00 fine for the assault on a police officer conviction, twenty days in jail and a $20.00 fine for the obstructing an officer conviction and assessed a $50.00 fine for the disorderly conduct conviction. Appellant appealed her convictions to the Circuit Court of Harrison County. On June 4, 1998, the circuit court denied her motion for a reversal and for a new trial and dismissed her appeal.

## II. Standard of Review

The motion for judgment of acquittal challenges the sufficiency of the evidence. 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 292 (2d ed.1993). In syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 669, 461 S.E.2d 163, 175 (1995), this Court explained the standard of review governing evidentiary sufficiency challenges in criminal cases:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as

---

1. Appellant's son suffers from a physical abnormality which causes calcium deposits in his shoulders and limits the use of his arms.

2. Appellant suffers from multiple sclerosis and has seizures. She needs a cane to assist in walking.

the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

However, Appellant's first assignment of error challenges whether or not a defendant can be convicted of assaulting an "off-duty" police officer, which is a purely legal issue. Accordingly, such an issue should be reviewed de novo: "'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review.' Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *University of W.Va. Bd. of Trustees ex rel. W.Va. Univ. v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996).

In regard to Appellant's assignments of error concerning the magistrate court's refusal to give certain jury instructions, we have held that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is de novo." Syl. Pt. 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996).

## III. Discussion

### A. Whether off-duty police officer was acting in lawful, official capacity

Appellant argues that the magistrate court erred in denying her motion for judg-

ment of acquittal because the off-duty police officer, Officer Dytzel, was not acting in his lawful, official capacity at the time of the alleged offenses, but was instead employed privately as a security guard acting under the direction of a private entity. Appellant contends that the three statutes defining the charges for which she was convicted specifically require that the police officer be acting in his lawful [3] or official [4] capacity at the time of the alleged offenses.

West Virginia Code § 61-2-10b(d), defining the offense of assault on a police officer, provides that "[i]f any person unlawfully attempts to commit a violent injury to the person of a police officer ... or unlawfully commits an act which places a police officer ... *acting in his or her official* [5] *capacity* in reasonably apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor...." *Id.* (emphasis added). West Virginia Code § 61-2-10b(e) defines police officer as "any police officer employed by any city or municipality who is responsible for the prevention or detection of crime and the enforcement of the penal, traffic or highway laws of this state." West Virginia Code § 61-5-17(a), in defining the offense of obstructing an officer, provides that "[a]ny person who by threats, menaces, acts or otherwise, forcibly or illegally hinders or obstructs, or attempts to hinder or obstruct, *any law-enforcement officer acting in his or her official capacity* is guilty of a misdemeanor...." *Id.* (emphasis added). Finally, West Virginia Code § 61-6-1b(a), in defining the offense of disorderly conduct, provides that:

> Any person who, in a public place ... disturbs the peace of others by violent, profane, indecent or boisterous conduct or

3. West Virginia Code § 61-6-1b(a), in defining the offense of disorderly conduct, specifically provides that such an offense arises only after the defendant is requested to desist his offending actions by a law enforcement officer acting in his "lawful" capacity.

4. West Virginia Code §§ 61-2-10b(d) (assault on a police officer) and 61-5-17(a) (obstructing an officer), both specifically provide that the defendant's offending actions must be committed against a police officer acting in his "official" capacity.

5. Black's Law Dictionary defines official, when used as an adjective, as "[p]ertaining to an office; invested with the character of an officer; proceeding from, sanctioned by, or done by, an officer. Authorized act." Black's Law Dictionary 748 (abridged 6th ed.1991). Official act is further defined as "[o]ne done by an officer in his official capacity under color and by virtue of his office. Authorized act." *Id.*

language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a *law-enforcement officer acting in his lawful* [6] *capacity,* is guilty of a misdemeanor. . . .

*Id.* (emphasis added).

Appellant contends that the above statutes covering the offenses for which she was convicted are clear and ambiguous and should be given their plain meaning; that is, that the statutes are only applicable where the police officer sought to be covered by said statutes is employed by a municipality at the time of the arrest and is not carrying out his authority at the direction of a private employer. Appellant contends that at the time of the alleged offenses, Officer Dytzel was not acting in his official, lawful capacity, but was employed privately as a security guard, was paid by Wal–Mart and acted under the direction of Wal–Mart.

Appellant also contends that it is a violation of public policy and the Bribery and Corrupt Practices Act, West Virginia Code §§ 61–5A–1 to –11 (1997) (hereinafter the "Act"), for a law enforcement officer, as defined in West Virginia Code § 61–5A–2,[7] to accept any pecuniary consideration or remuneration for the recipient's official action as a public servant. Appellant argues that by accepting monetary payment from Wal–Mart in the form of a salary for the performance of his duties as a police officer in the guise of a security guard, Officer Dytzel violated West Virginia Code § 61–5A–3 [8] and was not acting in his lawful or official capacity as a law enforcement officer. Appellant relies on syllabus point three from our decision in *State v. Orth,* 178 W.Va. 303, 359 S.E.2d 136 (1987), for this proposition:

It is general law that where a public peace officer, within his territorial jurisdiction, undertakes to discharge a duty which comes within the purview of his office, he is presumed to act in his official capacity. For his services in such connection he may have recompense only as fixed by law. A promise of a third person, whether individual or corporate, to remunerate him for such services is against public policy.

On the other hand, the State contends that Officer Dytzel acted in his lawful and official capacity at the time of the altercation with Appellant. The State also contends that he did not violate the Act because he did not accept any pecuniary benefit as consideration for his official action as a public servant.

We will begin our analysis with the *Orth* case. In *Orth,* we found that it "seem[ed] improper" for a Wheeling City Police Officer to withhold valid criminal warrants and then serve them at the direction of his private employer (Wheeling Downs Race Track) only after other debt collection measures had failed. 178 W.Va. at 308, 359 S.E.2d at 141. We explained that:

The track employed the police officer for its own private purposes, presumably the provision of security services. The security director for Wheeling Downs summoned his employee, the policeman, and had him serve the arrest warrants on the appellant, which is part of the policeman's official duty. *See* West Virginia Code § 8–14–3 (1984 Replacement Vol.). Essentially, then, the officer was engaged in privately motivated conduct while clothed with the official power of the state. This use of the official powers of a policeman under the direction of a private party seems to us to be improper.

*Orth,* 178 W.Va. at 308, 359 S.E.2d at 141. Thus, in *Orth,* the police officer either withheld or performed his official duty at the

---

**6.** Black's Law Dictionary defines lawful as "[l]egal; warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law; not illegal." Black's Law Dictionary 612 (abridged 6th ed.1991).

**7.** West Virginia Code § 61–5A–2(2) defines public servant as including "law-enforcement officers."

**8.** West Virginia Code § 61–5A–3 provides, in part, that "[a] person is guilty of bribery under the provisions of this section if he offers, confers or agrees to confer to or upon another, or solicits, accepts or agrees to accept from another, directly or indirectly: (1)[a]ny pecuniary benefit as consideration for the recipient's official action as a public servant. . . ."

request of his private employer, which troubled this Court because it fostered the impression that "the state's prosecutorial resources are available as a debt collection tool." *Id.*

The actions of the police officer in *Orth* are clearly distinguishable from the actions of Officer Dytzel in the instance case for two reasons: (1) in *Orth*, the officer's conduct was privately motivated while Officer Dytzel's actions in this case were motivated by his own perception that a violation of law occurred; and (2) in *Orth*, the officer violated West Virginia Code § 61–5A–3 by withholding execution of his official duty at the direction of his private employer while Officer Dytzel exercised his own judgment with respect to the arrest during the fracas.

When Appellant's efforts to pay for her family's purchases were frustrated she became loud and verbally abusive to the cashier. The manager testified that she called over Officer Dytzel simply to keep Appellant quiet and that she did not direct him to exercise his official police power. Neither the manager nor the cashier directed Officer Dytzel to do anything specific in regard to Appellant. Despite Officer Dytzel's repeated attempts to calm Appellant down, she grew even louder. She got louder and louder until at last she was loud enough that she commanded the attention of everyone in the front of the store. She got so loud, in fact, that the cashier testified that Appellant made her shake. Appellant stalked up and down the cash register aisle swearing and "saying she was going to get the f___ out of this place," even after Officer Dytzel repeatedly asked her to calm down.

Accordingly, there was evidence that Appellant was "disturb[ing] the peace of others by violent, profane, indecent or boisterous conduct or language." *See* W.Va.Code § 61–6–1b. While both the manager on duty that night and Appellant testified that no Wal-

Mart employee (other than Officer Dytzel) asked her to leave the store, Officer Dytzel, of his own initiative, told her she would have to leave or he would arrest her. When she refused to leave the record reflects that Officer Dytzel, of his own volition and duty as a police officer, made the independent decision to arrest Appellant, as was his duty pursuant to West Virginia Code § 8–14–3 (1998).[9]

Thus, Officer Dytzel's actions were not comparable to those this Court found objectionable in *Orth*. His conduct did not spring from the private motivations of his employer to withhold or activate a public officer's duty at will. They sprang from his determination of what he perceived to be the appropriate response to a public disturbance being committed in his presence. Moreover, Officer Dytzel's actions cannot be interpreted as a violation of the Act because Wal–Mart was not remunerating him "for ... [his] official action as a public servant." W.Va.Code § 61–5A–3(1). Rather, Wal–Mart paid him for the services he performed as a security guard. As Officer Dytzel testified, his job responsibilities as a security guard consisted mainly of monitoring the cash registers. Officer Dytzel's duty to the public as a police officer did not terminate while he was also performing the non-official tasks for which Wal–Mart paid him. While he was acting as a security guard, Officer Dytzel had an independent legal duty to "aid in the enforcement of the criminal laws of the state." W.Va. Code § 8–14–3.

The second part of syllabus point three of *Orth* states: "[f]or his services in such connection he may have recompense only as fixed by law. A promise of a third person, whether individual or corporate, to remunerate him for such services is against public policy." 178 W.Va. at 304, 359 S.E.2d at 137. This statement implies that an off-duty police officer can never be employed by a private employer and also carry out his public duty

---

9. West Virginia Code § 8–14–3 provides, in part, that:

It shall be the duty of the mayor and police officers of every municipality and any municipal sergeant to aid in the enforcement of the criminal laws of the state within the municipality, independently of any charter provision or any ordinance or lack of an ordinance with respect thereto, and to cause the arrest of or arrest any offender and take him before a magistrate to be dealt with according to the law. Failure on the part of any such official or officer to discharge any duty imposed by the provisions of this section shall be deemed official misconduct for which he may be removed from office.

pursuant to West Virginia Code § 8–14–3. We do not believe that *Orth* truly stands for that proposition. In fact, nothing in the statutes governing municipal police officers specifically states that a municipal police officer cannot be employed by a private entity during his off-duty hours.[10] The only limitation on such employment is found in West Virginia Code § 8–14–3, which provides, in part, that a municipal police officer shall not "engage in off-duty police work for any party engaged in or involved in such labor dispute or trouble between employer and employee." We wish to put to rest any confusion regarding this issue. Accordingly, we determine that this Court, in *Orth*, was simply attempting to emphasize that it was improper for a police officer to withhold or activate his official, public duty at the request of a private employer.

In fact, the first part of syllabus point three of *Orth*, which states that "[i]t is general law that where a public peace officer, within his territorial jurisdiction, undertakes to discharge a duty which comes within the purview of his office, he is presumed to act in his official capacity[,]" supports the contention that a police officer, while off-duty, may still act in his lawful, official capacity. 178 W.Va. at 304, 359 S.E.2d at 137; *see also Ferrell v. State Comp. Comm'r*, 114 W.Va. 555, 556, 172 S.E. 609, 610 (1934) (denying workman's compensation benefits to elected constable injured on side-job as peace officer for coal company because injury was incurred while acting in his official capacity); *Somerset Bank v. Edmund*, 76 Ohio St. 396, 81 N.E. 641, 643 (1907) (barring public officer from collecting money as reward for making arrest while off-duty stating "[a] constable [who] arrests a felon person … will be held to have acted in his official capacity.").

While this Court has decided cases that involved police officers engaged in secondary employment, it has not decided whether an off-duty police officer employed as a security guard acts in his official capacity when he is called upon to engage in law enforcement. However, many other states addressing this issue "have held that the courts must look to the particular facts of any given case to determine whether the officer involved was acting on behalf of the private employer or, instead, was discharging his or her 'official powers or duties' when the officer stopped or arrested the individual suspected of violating the law." *State v. Graham*, 130 Wash.2d 711, 927 P.2d 227, 231 (1996). In so doing, the court in *State v. Wilen*, 4 Neb.App. 132, 539 N.W.2d 650 (1995), noted that:

> many other jurisdictions have concluded in factually similar cases that police officers moonlighting for private employers as security guards or similar peacekeepers are engaged in official duties for purposes of officer assault statutes or statutes defining aggravating circumstances when, during the course of such secondary employment, they react to incidents of what may be criminal disorderly conduct.

*Id.* at 658 (*citing State v. Gaines*, 332 N.C. 461, 421 S.E.2d 569 (1992), *cert. denied*, 507 U.S. 1038, 113 S.Ct. 1866, 123 L.Ed.2d 486 (1992); *State v. Hartzog*, 575 So.2d 1328 (Fla. App.1991), *rev. denied*, 581 So.2d 1308 (1991); *Duncan v. State*, 163 Ga.App. 148, 294 S.E.2d 365 (1982); *Tapp v. State*, 406 N.E.2d 296 (Ind.App.1980); *People v. Barrett*, 54 Ill. App.3d 994, 12 Ill.Dec. 624, 370 N.E.2d 247 (1977)).

In *Wilen*, the Nebraska Appeals Court found that an off-duty police officer who was assaulted while privately employed as a security guard acted in her official capacity when she responded to a collision in the parking lot of her place of private employment. In affirming the conviction of the defendant who assaulted the officer, the court stated that "Officer Whitney performed duties for Hardee's that were supplemental to her primary duties of law enforcement on behalf of the

---

10. We note that West Virginia Code § 15–2–18(a) (1995) provides, in part, that a West Virginia state police officer "who hires himself or herself to any person, firm or corporation to guard private property, or who demands or receives from any person, firm or corporation any money … as a consideration for the performance of, or the failure to perform, his or her duties … shall be guilty of a felony…." However, West Virginia Code § 15–2–18(b), provides, in part, that "[n]otwithstanding any other provision of this article, the superintendent may contract with public, quasi-public, military or private entities to provide extraordinary police or security services by the department when it is determined … to be in the public interest."

general public. The fact that Officer Whitney received compensation from Hardee's, along with her salary from public employment, is of no consequence." 539 N.W.2d at 660.

To assess the nature of the police officer's secondary employment in *Wilen*, the court first determined that police officers retain certain professional obligations even when off-duty:

> A police officer on 'off-duty' status is nevertheless not relieved of the obligation as an officer to preserve the public peace and to protect the lives and property of the citizens of the public in general. Indeed, police officers are considered to be under a duty to respond as police officers 24 hours a day.

*Id.* at 65 (*quoting* 16A Eugene McQuillen, et al., *The Law of Municipal Corporations* § 45.15 at 123 (2d ed.1992)). In deciding that this twenty-four-hour duty rule accorded with Nebraska law, the *Wilen* court found that it comported with the Nebraska statute describing generally the duties of a police officer. *Id.* at 659. Under Nebraska Revised Statutes § 16–323 (Reissue 1991):

> [P]olice officers ... shall have the power and the duty to arrest all offenders against the laws of the state or of the city, by day or by night, in the same manner as a sheriff ... [and] police officers shall have the same powers as the sheriff in relation to all criminal matters arising out of a violation of a city ordinance....

539 N.W.2d at 659.

The *Wilen* court noted that section 16–323 did not distinguish between the authorities and duties of on and off-duty police officers. It found that "[o]ne can infer from the statutory language that police officers ... may, under proper circumstances, exercise their authority and peacekeeping duties at any time." *Wilen*, 539 N.W.2d at 659; *see also State v. Brown*, 36 Wash.App. 166, 672 P.2d 1268, 1269 (1983) (holding that statute

providing "[a] police officer may arrest a person without a warrant for committing a misdemeanor ... in the presence of the officer" does not make a distinction between the authority of police officers on or off duty). The corresponding West Virginia statute also lacks any distinction between on and off-duty police officers. *See* W.Va.Code § 8–14–3. With phrases such as "any such officer," "any offender" and the imposition of an affirmative duty to act, dereliction of which is a removable offense, the West Virginia statute provides strong language from which to infer that "police officers are expected to exercise their obligations, regardless of whether they are officially on duty." *Wilen*, 539 N.W.2d at 659. Accordingly, we hold that a municipal police officer on off-duty status is not relieved of his obligation as an officer to preserve the public peace and to protect the public in general pursuant to West Virginia Code § 8–14–3 (1998). Indeed, such police officers are considered to be under a duty to act in their lawful and official capacity twenty-four hours a day.[11]

Thus, finding that an off-duty police officer has the authority and duty to react to criminal conduct at all times, the *Wilen* court next addressed whether an off-duty police officer can discharge his official duties at the same time he is working as a private security guard. *See Graham*, 927 P.2d at 231 (observing that determining factor is whether the officer was "acting in vindication of the public right and justice or ... merely performing acts of service to their private employer") (*citing State v. Kurtz*, 78 Ariz. 215, 278 P.2d 406 (1954)).

In *Wilen*, as discussed above, an off-duty police officer, employed as a security guard by Hardee's restaurant became the victim of an attempted assault as she was investigating a minor collision in the restaurant parking lot. As in the instant case, she was wearing her official police uniform, was called to the scene by a fellow employee and then began her own investigation. While the officer was

---

11. We note, however, that this duty only arises when a law enforcement officer is acting within his territorial jurisdiction. *See* Syl. Pt. 2, *State ex rel. West Virginia v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999) (holding that "law enforcement officer acting outside of his or her territori-al jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest").

attempting to get information from the defendant, he sped off, nearly hitting her. The defendant was charged with attempted assault of a police officer. Like Appellant, he asserted that the victim-officer was not acting in her official capacity at the time of the incident because she was off-duty and working privately as a security guard.

In rejecting this argument, the *Wilen* court stated that an officer retains her official police officer status even in her private employment "unless it is clear from the nature of the officer's activities that he or she is acting exclusively in a private capacity or is engaging in his or her own private business." 539 N.W.2d at 660. The *Wilen* court found that public policy supported this conclusion:

> The practice of municipalities which allows law enforcement officers, while off-duty and in uniform, to serve as peacekeepers in private establishments open to the general public is in the public interest. The presence of uniformed officers in places susceptible to breaches of the peace deters unlawful acts and conduct by patrons in those places. The public knows 'the uniform and the badge stand for the authority of the government. The public generally knows that law enforcement officers have a duty to serve and protect at all times. A holding that law enforcement officers have no official duty to maintain the peace under these circumstances would be in contravention of the policy we seek to further.

*Id.* (*citing Duncan v. State*, 163 Ga.App. 148, 294 S.E.2d 365, 366–6 (1982)); *see also Brown*, 672 P.2d at 1269 (holding that objectives of Washington's authority to arrest pursuant to assaulting police officer statutes are best achieved by concluding that it is unlawful to resist arrest by an off-duty police officer who discloses his identity).

In *Graham*, the Supreme Court of Washington, in reaching the same conclusion as the *Wilen* court in a factually analogous situation, explained that:

> When the officers stopped the defendant, they stepped out of their roles as private security guards and into their roles as police officers. They were identified as police officers and their status as police officers was known to the defendant. The officers were acting as public servants who were discharging their official duties, for purposes of the obstructing statute, and as peace officers for purposes of the resisting arrest statute, at the time they were involved with the defendant.

*Graham*, 927 P.2d at 233.

Like the police officer in *Wilen*, Officer Dytzel was an off-duty police officer engaged in secondary employment as a security guard for a private commercial entity, who also had the duty and authority to act in his official capacity even when off-duty. Officer Dytzel was wearing his uniform when he was assaulted by Appellant and he "performed duties for ... [Wal–Mart] that were supplemental to ... [his] primary duties of law enforcement on behalf of the general public." 539 N.W.2d at 660. Like the officer in *Wilen*, he also received compensation for those supplemental duties for Wal–Mart in addition to his salary as a police officer. *See id.* Therefore, just as in *Wilen* and *Graham*, we must reject Appellant's assertion that the officer she assaulted and resisted was not acting in his lawful, official capacity when he caused her to be arrested.[12]

---

12. Other states have held similarly. *See Gibson v. State*, 316 Ark. 705, 875 S.W.2d 58, 62 (1994) (holding that evidence that officer was employed by city as police officer was sufficient evidence that officer was discharging official duties when assaulted while off-duty); *Young v. State*, 626 N.E.2d 474, 477 (Ind.Ct.App.1993) (upholding appellant's conviction for resisting law enforcement officers and finding "[w]hen a police officer takes it upon himself to enforce the law in order to maintain peace and order for the benefit of the public, the officer is performing official duties as a police officer"); *Tapp v. State*, 406 N.E.2d 296, 301–2 (Ind.Ct.App.1980) (upholding appellant's conviction for battery on police officer and re- jecting argument that officer was acting as private guard, not as police officer, at time of arrest, finding that officer's duties are not constrained by time and place limitations); *State v. Coleman*, 224 Kan. 447, 580 P.2d 1329, 1333 (1978) (holding plain-clothes, off-duty police officer working as store detective is law enforcement officer performing official duty when he identified himself as police officer to suspected shoplifter and arrested suspect); *Wood v. State*, 486 S.W.2d 771, 773 (Tex.Crim.App.1972) (rejecting appellant's attempt to raise as affirmative defense to assaulting police officer that arresting officers were privately employed and therefore not engaged in lawful discharge of their duties at time of arrest).

■ Thus, an off-duty municipal police officer employed by a private entity as a security guard retains his or her official police officer status even in the private employment, unless it is clear from the nature of the officer's activities that he or she is acting in an exclusively private capacity or engaging in his or her private business. To the extent that syllabus point three of *Orth* implies that a police officer cannot act in his or her lawful and official capacity while also working privately as a security guard, it is hereby overruled.

The foregoing clearly illustrates that Appellant has not met the "heavy burden" taken on by a defendant challenging the sufficiency of the evidence to support a conviction. *See* Syl. Pt. 3, *Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169. For as this Court stated in *Guthrie*, "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.* The State presented evidence that Officer Dytzel was employed as a police officer by the Clarksburg Police Department at the time of the assault. The foregoing analysis shows that as a police officer, he had a duty to act in his official (pursuant to his authority as a police officer) and lawful (authorized by law) capacity if the need arose at all times. The State presented evidence that he was acting to enforce the peace of his own volition at the time of the assault, rather than serving his private employer at its direction. Thus, the record does contain evidence "from which the jury could find guilt beyond a

reasonable doubt." *Id.* Therefore, the magistrate court correctly refused Appellant's motions for acquittal and the circuit court correctly dismissed Appellant's appeal.

Although we are affirming Appellant's convictions, we are somewhat concerned by the police officer's and Wal–Mart's conduct in this case. The circumstances surrounding the incident create a great deal of sympathy for Appellant. Indeed, it does appear that this police officer and Wal–Mart went just a little overboard in its pursuit of this woman and her family in the criminal system as a result of the fracas that occurred as a result of the frustration level running so high. However, this issue is one of wider import that must be decided not only upon these facts, where our sympathies might well lie with Appellant, but in a larger context.

### B. Appellant's instructions numbered three and five

■ In Appellant's next assignment of error, she argues that the magistrate court erred in refusing to give her proposed instructions numbered three and five,[13] regarding her First Amendment[14] right to challenge the authority of a police officer. The State argues that while instruction numbered three was a correct statement of First Amendment protection afforded under West Virginia law, it was substantially covered in Appellant's instruction numbered four,[15] which was given to the jury, and failure to give this instruction did not seriously impair Appellant's ability to present her First

13. Appellant's proposed instructions numbered three states that "[t]he Court instructs the jury that under the laws of the State of West Virginia, every person has a First Amendment right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." Appellant's proposed instruction numbered five states that:

> The Court instructs the jury that the term "fighting words" means words directed to a person of the hearer which would have a tendency to cause acts of violence by the person to whom, individually, the remark is addressed.
>
> The Court further instructs the jury that the term 'opprobrious language' means language which expresses disgrace or contemptuous reproach.

> The Court further instructs the jury that the word 'remonstrating' means saying in protest, objection or reproof.

Even though Appellant includes proposed instruction numbered five in this assignment of error, her argument only examines her proposed instruction numbered three. Therefore, our analysis is also limited to instruction numbered three.

14. Amendment I to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech...."

15. Appellant's instruction numbered four, which was given to the jury, states that "[t]he Court instructs the jury that merely questioning or remonstrating with an officer whil[e] he is performing his duty does not ordinarily constitute the offense of obstructing an officer."

Amendment defense, which was argued in Appellant's closing argument.

■ Regarding a court's refusal to give a requested jury instruction, we have held that:

A trial court's refusal to give a requested instruction is reversible only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994); *see also State v. Wade*, 200 W.Va. 637, 646, 490 S.E.2d 724, 733 (1997), *cert. denied, Wade v. West Virginia*, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997). In light of this syllabus point, we find that the trial court's refusal to give Appellant's proposed instruction numbered three was not in error and should not be reversed. While Appellant's instruction numbered three is a correct statement of the law,[16] we agree with the State that it was substantially covered in the charge actually given to the jury in Appellant's instruction numbered four. Instruction numbered four is a direct quote from *Gustke*, 179 W.Va. at 773, 373 S.E.2d at 486.

Appellant maintains, however, that the issue of her First Amendment rights was not covered at all in any other instruction or the actual charge given to the jury. The conduct that the First Amendment protects is con-

tained in Appellant's instruction numbered four. The proffered quotation from the syllabus of *Gustke* contained in Appellant's proposed instruction numbered three is merely a rephrasing of that conduct and its attribution to the First Amendment. Thus, by giving instruction numbered four, but not three, the jury was missing only the legal derivation of the protected conduct. "[T]he province of the jury [is] to determine disputed predicate facts...." *Hutchison v. City of Huntington*, 198 W.Va. 139, 149, 479 S.E.2d 649, 659 (1996). Therefore, instructing the jury on what conduct is protected, but not what specific law protects that conduct is of no consequence. The jury chose to credit Officer Dytzel's testimony regarding the events that occurred that night at Wal–Mart instead of Appellant's. The jury was informed of what Appellant had a right to do under the law and it found that she did not do it. Simply including the First Amendment concept in the instruction would not have changed the outcome. Appellant asked for and was given an instruction that covered the her right to question or remonstrate an officer while he is performing his duties. Accordingly, the magistrate court's refusal to give Appellant's proposed instruction numbered four was not in error.

**C.  Appellant's instruction numbered six**

Appellant also argues that the magistrate court erred in striking the following language from her instruction six: "[The state] must also prove beyond a reasonable doubt that the defendant, Donna Lea Phillips, was not acting in defense [of] her son...."[17] The

---

**16.** In the syllabus of *State ex rel. Wilmoth v. Gustke*, 179 W.Va. 771, 373 S.E.2d 484 (1988), we held that:

A person, upon witnessing a police officer issuing a traffic citation to a third party on the person's property, who asks the officer, without the use of fighting or insulting words or other opprobrious language and without forcible or other illegal hindrance, to leave the premises, does not violate *W.Va.Code*, 61–5–17 [1931], because the person has not illegally hindered an officer of this State in the lawful exercise of his or her duty. To hold otherwise would create first amendment implications which may violate the person's right to freedom of speech. *U.S. Const.* amend. I; *W.Va. Const.* art. III, § 7.

**17.** Appellant's instruction numbered six, in part, reads as follows:

In order to prove the commission of the offense of assault upon a police officer, the State must prove beyond a reasonably doubt that the Defendant, Donna Lea Phillips, unlawfully attempted to commit a violent injury to the person of Ptlm. Dytzel, a police officer, or unlawfully committed an act which placed Ptlm. Dytzel, a police officer acting in his official capacity, in reasonable apprehension of immediately receiving violent injury, *and must prove beyond a reasonable doubt that the defendant, Donna Lea Phillips, was not acting in defense [of] her son....*

The italicized portion of the instruction was redacted from the actual instruction given to the jury.

State argues that the magistrate court did not err in striking the above-language from Appellant's instruction numbered six because it incorrectly stated the law and because it was substantially and correctly covered by Appellant's instruction numbered seven.[18]

■ By applying the test found in syllabus point eleven of *Derr*, we find that the trial court's redaction of the last sentence in Appellant's instruction numbered six was not in error and should not be reversed. First, and most importantly, the language redacted from instruction numbered six was an incorrect statement of the law in that it misstates the burden of proof regarding the defense of others theory. "To properly assert the defense of another doctrine, a defendant must introduce 'sufficient' evidence of the defense in order to shift the burden to the State to prove beyond a reasonably doubt that the defendant did not act in defense of another." Syl. Pt. 4, in part, *State v. Cook*, 204 W.Va. 591, 515 S.E.2d 127 (1999); *see also* Syl. Pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978) (holding that "[o]nce there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."). Appellant's instruction numbered six, as written, foisted the burden onto the State of proving that she did not act in defense of her son as if it were another element of the charged offense, which was clearly an incorrect statement of law.

Second, the contested portion of Appellant's instruction numbered six was substantially covered in the charge actually given to the jury, because Appellant's instruction numbered seven properly instructed the jury on the defense of another theory. Further, by simply adding the phrase "[i]f evidence of defense of another is present" Appellant's instruction numbered seven cured the legal defect in instruction numbered six. *See* nn. 10 and 11, *supra.* Finally, the magistrate court's refusal to give the last sentence of instruction numbered six did not seriously impair Appellant's ability to present her defense of another theory because as articulated above, Appellant's instruction numbered seven properly instructed the jury on this issue. Thus, the magistrate court did not err by redacting the last sentence from Appellant's instruction numbered six.

### D. Circuit court's refusal to grant motion to reverse

Finally, Appellant argues that pursuant to West Virginia Code § 50–5–13 (1994 and Supp.1998)[19] the circuit court should have granted her motion to reverse her convictions because the judgment of the magistrate court does not conform with the law. In this case, no such remedy was warranted because, as the foregoing analysis clearly demonstrates, the judgment of the magistrate court did conform with both West Virginia statutory and common law.

### E. Conclusion

Based upon the foregoing, we affirm the order of the Circuit Court of Harrison County.

Affirmed.

---

**18.** Appellant's instruction number seven, in part, reads as follows:

If evidence of defense of another is present, the State must prove beyond a reasonable *doubt that the defendant did not act in defense* of another. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in defense of another, *you must find the defendant not guilty.* In other words, if you have a reasonable doubt whether or not the defendant acted in defense of another, your verdict must be not guilty.

**19.** West Virginia Code § 50–5–13(c)(3) provides that "[t]he circuit court shall consider whether the judgment or order of the magistrate is: (A) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law[.]"