457 S.E.2d 113

**Guy R. HILL, Petitioner Below, Appellant,**

**v.**

**Jane L. CLINE, Commissioner and The West Virginia Department of Motor Vehicles, Respondent Below, Appellee.**

**No. 22080.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided March 24, 1995.

Steven L. Miller, Cross Lanes, for appellant.

Darrell V. McGraw, Atty. Gen., Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellee.

NEELY, Chief Justice.

Guy R. Hill appeals the order of the Circuit Court of Kanawha County revoking his driver's license for ten years for driving under the influence. On appeal, Mr. Hill maintains that the Kanawha County deputy lacked probable cause to stop his vehicle, thus tainting his arrest and its sequela. However, because the record shows that the deputy had a reasonable suspicion to stop Mr. Hill, we find that Mr. Hill's subsequent arrest on a different matter was proper and affirm the circuit court.

At approximately 12:30 a.m., 1 May 1991, Deputy R.W. Rose of the Kanawha County Sheriff's Department was called to investigate a boyfriend/girlfriend violence complaint

involving a convenience store's clerk. While the deputy was talking to the female clerk, she pointed to a passing car and told the deputy that the car's driver, Mr. Hill, was her boyfriend who earlier came into the store and committed some misdemeanor offenses against her.[1]

Deputy Rose followed Mr. Hill's car. After Mr. Hill's car turned around to return to the general area of the convenience store, the deputy stopped Mr. Hill's car to check on Mr. Hill's attitude and general demeanor. When talking to Mr. Hill, the deputy detected the odor of alcohol and noticed that Mr. Hill's speech was "slurred." The deputy administered several field sobriety tests. According to Deputy Rose's testimony, in the walk-and-turn test, Mr. Hill failed to touch his heel to toe, lost his balance and took an incorrect number of steps. In the Horizontal Gaze Hystagmus test, Mr. Hill exhibited the on-set of nystagmus in both eyes before a 45 degree angle, with distinct nystagmus at maximum deviation. In the one-leg stand test, Mr. Hill swayed and kept putting his foot down. Based on the sobriety tests, the deputy arrested Mr. Hill for driving under the influence.

After his arrest Mr. Hill was transported to the Charleston Police Duty Office, he was given his *Miranda* warnings [2] and was issued an implied consent statement about taking a secondary chemical test. Although requested twice, Mr. Hill refused to take the breathalyzer test.

After the Division of Motor Vehicles received Deputy Rose's statement, a Preliminary Order of Revocation was issued. Mr. Hill requested an administrative hearing, and, thereafter, Jane L. Cline, the Commissioner, entered a final order revoking his license for 10 years. After the circuit court upheld the revocation, Mr. Hill appealed to this Court.

## I

Mr. Hill alleges that the deputy lacked probable cause to stop his vehicle and failed to obtain a warrant. However, probable cause is not necessary for a pointed, brief investigative or *Terry* stop.[3] Syl. pt. 1, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994) states:

> Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime. To the extent *State v. Meadows*, 170 W.Va. 191, 292 S.E.2d 50 (1982), holds otherwise, it is overruled.

In *State v. Stuart*, the defendant was stopped for driving under the influence, in part, based on an anonymous 911 call. We applied the "totality of the circumstances approach" used by the Supreme Court in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) and concluded that "the other facts ... corroborated [the anonymous call] sufficiently to give it an indicia of reliability. [Footnote omitted.]" *State v. Stuart*, 192 W.Va. at 433, 452 S.E.2d at 891. Syl. pt. 2, *State v. Stuart* states:

> When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police.

Recently in *State v. Jones*, 193 W.Va. 378, 456 S.E.2d 459 (1995), we discussed the limited nature of an investigative stop. We noted that because a *Terry* stop "involves less intrusion on the individual's privacy, the seizure's validity is ordinarily tested by less severe standards than the probable cause standard that is necessary to effect an arrest." *State v. Jones*, 193 W.Va. at 383, 456 S.E.2d at 464, quoting *State v. Boswell*, 170 W.Va. 433, 438, 294 S.E.2d 287, 292 (1982). The Supreme Court in *Dunaway v. New*

---

1. Mr. Hill's alleged acts against the store clerk are not detailed; rather, Deputy Rose testified that he "met a female complainant who stated that her boy friend had come into her place of business and perpetrated a few misdemeanor offenses."

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*York,* 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979) said that upon a proper balance of interests, *Terry* stops could be made upon "reasonable suspicion." *State v. Jones,* 193 W.Va. at 383, 456 S.E.2d at 464.

The Supreme Court in *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) noted that although the intrusion permitted varies with the facts and circumstances of each case, "[t]his much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. [Citations omitted.]" *Terry* also required the governmental interest justifying the particular intrusion to be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. [Footnote omitted.]" 392 U.S. at 21, 88 S.Ct. at 1880.

Syl. pt. 2, *State v. Jones, supra,* provides the following summary concerning a seizure's validity:

If the police merely question a suspect on the street without detaining him against his will, Section 6 of Article III of the West Virginia Constitution is not implicated and no justification for the officer's conduct need be shown. At the point where a reasonable person believes he is being detained and is not free to leave, then a stop has occurred and Section 6 of Article III is triggered, requiring that the officer have reasonable suspicion that criminal activity is afoot. If the nature and duration of the detention arise to the level of full-scale arrest or its equivalent, probable cause must be shown. Thus, the police cannot seize an individual, involuntarily take him to a police station, and detain him for interrogation purposes while lacking probable cause to make an arrest.[4]

■ In this case, Mr. Hill was identified by the store clerk as the person who attacked her. Deputy Rose stopped Mr. Hill when Mr. Hill turned around to return "into the general vicinity of my complainant and just for a check on the attitude and general demeanor of the suspect." *Terry* recognized that the government had an interest in effective crime prevention and detection, an interest "which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for the purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880.

■ Given the totality of this case's circumstances—namely, the probable boyfriend/girlfriend violence complaint and Mr. Hill's attempted return to the area of the store, we find that the officer had reasonable suspicion to stop Mr. Hill and, therefore this pointed, brief investigative stop did not violate Mr. Hill's rights under *W.Va. Const.* art. II, § 6.

II

Mr. Hill also argues that because there was no probable cause for a traffic stop, his subsequent arrest for driving under the influence was not lawful and the implied consent law does not apply.[5] However, once Mr. Hill's car was stopped for a legitimate reason (see Section I, *supra*), probable cause arose to believe that Mr. Hill was driving under the influence and his subsequent arrest for driving under the influence was lawful.

■ In *State v. Moore,* 165 W.Va. 837, 845, 272 S.E.2d 804, 810 (1980), *overruled on other grounds, State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991), we noted that "while

---

4. *See State v. Jones,* 193 W.Va. at 386 n. 17, 456 S.E.2d at 467 n. 17 for a discussion of West Virginia's seizure cases.

5. Syl. pt. 4, *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978) states:
Where the request is made to take the ultimately designated test under the implied consent law and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his assent to take the test on factors that are extraneous to the procedures surrounding the test, proof of refusal is sufficiently established.
*See W.Va.Code* 17C–5A–1 [1994] *et seq.*

an automobile cannot be arbitrarily stopped, it may be stopped for some legitimate state interest." Once a lawful stop is made, any probable cause on a different matter that arises may be pursued. Syl. pt. 2, *State v. Moore* states:

> An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made.

*In accord,* Syl. pt. 2, *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983).

In *State v. Moore,* the defendant's car was initially stopped because of a missing tail light; however, once the car was stopped for a traffic violation, we found that the circumstances did not constitute probable cause for the subsequent drug-related search and seizure.

In this case, while Mr. Hill was stopped, Deputy Rose detected the odor of alcohol and proceeded to investigate by administering several field sobriety tests. After Mr. Hill failed the sobriety tests, probable cause existed to arrest Mr. Hill for driving under the influence. Based on the record, we find that Mr. Hill's arrest for driving under the influence was lawful and that the implied consent laws were properly applied.[6]

For the above stated reasons, we affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

**6.** In his final assignment of error, Mr. Hill restates his other assignments of error by asserting that procedural safeguards was dispensed with because the "Commissioner vaguely concluded the petitioner was lawfully arrested." The record shows that the Commissioner's final order found that probable cause existed and that Mr. Hill's arrest was lawful.