# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0227** (Monongalia County 19-MAP-18)

**William A. Cox, II,**
**Defendant Below, Petitioner**

**FILED**

**January 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William A. Cox II, by counsel Edmund J. Rollo, appeals the February 21, 2020, order of the Circuit Court of Monongalia County finding petitioner guilty of obstructing an officer, assault on a law enforcement officer, and public intoxication following a bench trial. Respondent the State of West Virginia, by counsel Gordon L. Mowen II, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 5, 2019, petitioner was arrested and charged with obstructing an officer in violation of West Virginia Code § 61-5-17(a),[1] assault on an officer in violation of West Virginia

---

[1] A person commits the crime of obstructing an officer when that person "threat[ens] menaces, acts, or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer . . . acting in his or her official capacity[.]" W. Va. Code § 61-5-17(a).

1

Code § 61-2-10b(d),[2] and public intoxication in violation of West Virginia Code § 60-6-9(a).[3] Following a bench trial in magistrate court, petitioner was found guilty on all charges. Petitioner appealed his convictions to circuit court. The circuit court held a bench trial on February 20, 2020, during which it heard testimony from two individuals: the arresting officer, Officer Aaron Dalton of the Westover Police Department, and petitioner. The circuit court also viewed Officer Dalton's body cam footage from the arrest.

Office Dalton testified that on January 5, 2019, he was assigned to patrol during the 10:00 a.m. to 8:00 p.m. shift. At approximately 5:18 p.m., while Officer Dalton sat in his patrol car, he observed petitioner approaching his vehicle from a side street. Officer Dalton testified that, as petitioner walked behind the patrol car, he could see petitioner "scratching his head and he had his middle finger up and then as he got further from the cruiser, he turned and started waving his middle finger and shouted some profanity." Office Dalton stated that he then exited the patrol car, approached petitioner, and "asked him what his problem was." According to Officer Dalton, petitioner replied, "[F]uck you. I can say fuck you as many times as I want to and there's nothing you can do about it." Officer Dalton said he responded by returning to his vehicle and advising petitioner to leave.

Officer Dalton claimed that after he returned to his vehicle, petitioner stood approximately forty feet from the patrol car for about five to ten minutes. During this time, Officer Dalton said petitioner "continued to stare at me, posture himself in an aggressive manner, and to say fuck you, over and over again." After that, according to Officer Dalton, petitioner walked back toward the patrol car, at which point Officer Dalton activated his body cam. Officer Dalton testified, "I don't know what his intentions are. I don't know if he's armed. He's, obviously, not happy with me. He's, obviously, aggressive. He, obviously, doesn't care to confront me. So as he goes to walk

---

[2] Reference to West Virginia Code § 61-2-10b(d) in the criminal complaint appears to be a typographical error. West Virginia Code § 61-2-10b(d) describes battery, while West Virginia Code § 61-2-10b(e) describes assault. The criminal complaint quotes the relevant language from West Virginia Code § 61-2-10b(e). Petitioner has not argued, either before the lower courts or on appeal, that his conviction for assault of a law enforcement officer is invalid as a result of the error.

> Any person who unlawfully attempts to commit a violent injury to the person of a . . . law-enforcement officer, acting in his or her official capacity and the person committing the battery knows or has reason to know that the victim is acting in his or her official capacity, or unlawfully commits an act which places that person acting in his or her official capacity in reasonable apprehension of immediately receiving a violent injury and the person committing the battery knows or has reason to know that the victim is acting in his or her official capacity, is guilty of a misdemeanor . . . .

W. Va. Code § 61-2-10b(e).

[3] Pursuant to West Virginia Code § 60-6-9(a)(1), "[a] person may not . . . [a]ppear in a public place in an intoxicated condition[.]"

2

behind the cruiser, he shouts some more obscenity." Officer Dalton also said, "I have no idea what he's doing, but at this point, I'm not going to wait any longer to see. He's violating city ordinance. He's, obviously, intoxicated and he's being disorderly with his profane swearing in public." In response to petitioner walking back toward him, Officer Dalton said that he again exited his patrol car and approached petitioner to "detain and identify him and investigate further what the situation was." Officer Dalton explained, "At that point, I suspected that he was under the influence of something because of his actions being unreasonable and unprovoked on my part, and as I approached him, I gave him orders to stop."

Officer Dalton testified that when he ordered petitioner to stop, petitioner continued to walk away from him. Officer Dalton said that he then grabbed petitioner's arms from behind and that petitioner responded by turning and attempting to push him away, saying, "I'm going to blast you or bust you." In response, Officer Dalton stated that he deployed pepper spray on petitioner and "took him to the ground." An off-duty officer passing the scene stopped and assisted Officer Dalton in restraining petitioner.

When asked the basis for the charge of obstructing an officer, Officer Dalton testified:

> Well, after [petitioner's] actions and him coming back toward the car, and me, basically, fearing for my safety, and suspecting that he is under the influence in a public place, I had the lawful right to detain and identify him for further investigation. He refused to let me do that. I had to grab a hold of him. I had to pepper spray him. I had to put him on the ground and put him in handcuffs.

> So, at that point, he was obstructing me, preventing me from conducting my duty as a law enforcement officer.

Officer Dalton also explained the basis for the public intoxication charge:

> Well, he had the odor of alcohol coming from him and he was, you know, I could tell by looking at him, he probably had a few drinks.

> . . . .

> He was not falling down drunk. He wasn't impaired to the point of, you know, he's going to stagger out into traffic or something like that, but he had the red glassy eyes and the normal detectional clues were present from someone who had consumed some alcohol. Also, his behavior was out of the ordinary. It wasn't reasonable. No reasonable person would have done what he did unprovoked.

With regard to the basis for the charge of assault on a law enforcement officer, Officer Dalton stated that petitioner struck him in the chest as Officer Dalton attempted to stop petitioner, which Officer Dalton said put him in reasonable apprehension of receiving violent injury. Officer Dalton admitted to recognizing petitioner as someone he had seen walking on the street prior to January 5, 2019, but he stated that he had never met petitioner nor issued a citation to him prior to January 5, 2019.

Petitioner testified that his encounter with Officer Dalton occurred while petitioner was walking home from a local restaurant, where he had been drinking beer from a little after 2:00 p.m. until a few minutes before 5:00 p.m. Petitioner said he drank a total of five beers while at the restaurant, but ate no food while there.

Petitioner denied saying anything to Officer Dalton as he walked behind Officer Dalton's vehicle the first time. Petitioner testified that when he was about twenty-five feet past the vehicle, Officer Dalton yelled at him and asked "[w]hat my problem was" and if petitioner "wanted to go to jail." Petitioner asserted, "[T]hat's when I said, fuck you." Petitioner stated that Officer Dalton "chased" petitioner down and asked again what his problem was and whether he wanted to go to jail before Officer Dalton returned to his vehicle.

Petitioner then testified that his interaction with Officer Dalton made him concerned for his wellbeing. Petitioner stated that he had one prior interaction with Officer Dalton in which Officer Dalton said "a few . . . derogatory words" to petitioner and that the prior interaction also made petitioner concerned for his safety. Petitioner said he stood near the patrol car smoking a cigarette for "a couple minutes" while deciding whether to continue walking home or go back to the restaurant. Petitioner stated that he decided to walk back to the restaurant because there would be more people along that route.

Petitioner testified that as he walked back toward the restaurant, Officer Dalton attempted to stop him. Petitioner admitted to telling the officer "fuck you" and using vulgarities during their interaction. Petitioner stated that he did not believe that when Officer Dalton told him to stop that he was being detained or lawfully placed under arrest. Petitioner admitted to making physical contact with Officer Dalton after Officer Dalton grabbed him; however, petitioner claimed that he acted in self-defense.

After considering the evidence, the circuit court ruled that "[w]hat Mr. Cox did was against the law" and that "[h]is actions were against the law, not necessarily his speech[,] and the arrest was not unlawful." The circuit court found petitioner guilty on all three charges. Specifically with regard to the public intoxication charge, the circuit court said, "The Court finds the [d]efendant guilty of public intoxication based on the amount of alcohol that was consumed before he went out in public and, quite frankly, acted the way he did." The circuit court entered a final order on February 21, 2020, finding petitioner guilty on all three charges. Petitioner received two six-month jail sentences, which were set to run concurrently, for obstructing an officer and assault on a law enforcement officer. The circuit court suspended the jail sentences and placed petitioner on a one-year period of unsupervised probation. Petitioner was fined $50.00 for public intoxication.

Petitioner now appeals the circuit court's February 21, 2020, order. On appeal, petitioner asserts three assignments of error, each relating to the sufficiency of evidence to sustain petitioner's convictions. In his first and second assignments of error, petitioner generally contends that the evidence presented during his bench trial was insufficient to convict him on each charge. We have held that

"[i]n reviewing challenges to the findings and conclusions of the circuit

4

court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 1, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006). Regarding evaluating allegations that the evidence was insufficient to support a conviction, the Court has held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Here, petitioner argues that he exercised his First Amendment right to free speech during his interactions with Officer Dalton on January 5, 2019; that his statements to Officer Dalton were protected by the First Amendment; that his protected statements prompted Officer Dalton to illegally stop, arrest, and charge him with obstructing an officer and assault on a law enforcement officer; and that his subsequent conviction on these charges violated his constitutional right to free speech. Petitioner argues that the evidence presented below was insufficient for the circuit court to find otherwise. We disagree.

We have long held that the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *State ex rel. Wilmoth v. Gustke*, 179 W. Va. 771, 773, 373 S.E.2d 484, 486 (1998). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 773-74, 373 S.E.2d at 486-87 (quoting *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). This Court has recognized that "constitutionally protected free speech cannot be relied upon as a basis for establishing the offense of obstruction." *State v. Carney*, 222 W. Va. 152, 158, 663 S.E.2d 606, 612 (2008) (citing *Gustke*, 179 W. Va. at 774, 373 S.E.2d at 487). However, "the first amendment right to freedom of speech [is] not absolute[.]" *Gustke*, 179 W. Va. at 774 n.5, 373 S.E.2d at 487 n.5. Certain language directed to police officers, such as "fighting words" or "obscene or opprobrious language," is not protected by the First Amendment. *Id.* at 774, 373 S.E.2d at 487.

West Virginia law regulates the interactions police have with citizens of the State. To conduct a lawful stop of a suspect, a police officer must have a "reasonable suspicion that criminal activity is afoot." Syl. Pt. 3, in part, *Hill v. Cline*, 193 W. Va. 436, 457 S.E.2d 113 (1995). The officer must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Reed v. Aiken*, No. 15-0437, 2016 WL 1532758, at *4 (W. Va. Apr. 14, 2016)

5

(memorandum decision). "'When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both quantity and quality of the information known to the police.' Syllabus Point 2, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994)." Syl. Pt. 5, *Ullom v. Miller*, 227 W. Va. 1, 705 S.E.2d 111 (2010).

A defendant alleging that he has been arrested in retaliation for exercising his first amendment right to freedom of speech "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). *Cf.* Syl. Pt. 4, *Jarvis v. West Virginia State Police*, 227 W. Va. 472, 711 S.E.2d 542 (2010) ("A plaintiff who brings a cause of action alleging that he or she was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution must plead and prove as an element of the cause of action that there was an absence of probable cause to support the criminal prosecution."); *see also* Syl. Pt. 3, *Hill*, 193 W. Va. 436, 457 S.E.2d 113 (holding that when "the nature and duration of the detention [of a suspect] arise to the level of full-scale arrest or its equivalent, probable cause must be shown"). However, the requirement that a defendant show an absence of probable cause "should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

If an officer attempts to make an unlawful arrest, the suspect may resist arrest. In *State v. Gum*, 68 W. Va. 105, 69 S.E. 463 (1910), we held:

> If an attempted arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he cannot do this by using or offering to use a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arrest.

Syl., in part, *id.*; *see also State v. Mullins*, 135 W. Va. 60, 64, 62 S.E.2d 562, 564-65 (1950) ("If, as the State claims, [the officer] did not have the legal right to arrest [the defendant] unless he was in a state of gross intoxication, and the proof does not disclose that [the defendant] was in such a state of gross intoxication, then Chapman had the right to resist arrest.").

In this case, it is unnecessary to evaluate the character of petitioner's expletive-laden statements to Officer Dalton to determine whether those statements were indeed protected by the First Amendment. Even assuming they were, the evidence presented at petitioner's bench trial was sufficient to demonstrate, beyond a reasonable doubt, that petitioner was not stopped by Officer Dalton for making those statements and exercising his right to free speech. Rather, petitioner was stopped by Officer Dalton because Officer Dalton reasonably suspected petitioner was committing a crime, to wit: public intoxication.

Officer Dalton was clear in his testimony that he suspected petitioner of committing the crime of public intoxication *before* he stopped petitioner. Through his detailed testimony, Officer Dalton set forth a particularized and objective basis for suspecting petitioner of public intoxication under the totality of the circumstances, specifically noting petitioner's unusual, aggressive, and unprovoked behavior. The facts establish that the basis for Officer Dalton stopping petitioner was

6

his reasonable suspicion that petitioner was intoxicated in violation of West Virginia Code § 60-6-9(a)(1). Officer Dalton did not stop petitioner because petitioner was exercising his right to free speech. Thus, Officer Dalton lawfully stopped petitioner.

Petitioner's arrest was also lawful. Officer Dalton observed that petitioner had red, glassy eyes and the odor of alcohol on his person, which aligns with petitioner's own admission that he had been drinking directly before the encounter with Officer Dalton. Coupled with Officer Dalton's other observations concerning petitioner's behavior, the facts show that Officer Dalton had probable cause to lawfully arrest petitioner for public intoxication. Further, petitioner failed to show that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Because Officer Dalton's arrest of petitioner was lawful, petitioner did not lawfully resist arrest.

For these reasons, we must conclude that petitioner was not stopped, arrested, or charged in violation of his First Amendment rights. Furthermore, because his arrest was lawful, petitioner did not have the right to resist arrest. Accordingly, under the specific facts of this case, the evidence was sufficient to convict petitioner of obstructing an officer and assault on a law enforcement officer, and the circuit court did not abuse its discretion in finding petitioner guilty of these crimes.

In his final assignment of error, petitioner argues that the evidence was insufficient to sustain his conviction for public intoxication. He argues that he was not intoxicated and that Officer Dalton's body cam footage shows that petitioner was not intoxicated. Petitioner accuses Officer Dalton of escalating the situation by confronting petitioner. Again, we must disagree. As noted above, Officer Dalton observed that petitioner had red, glassy eyes; that petitioner's verbal criticisms of Officer Dalton were unprovoked; that petitioner's behavior was unusual and aggressive; and that petitioner smelled of alcohol. Furthermore, petitioner admitted he drank five beers before his encounter with the officer. Viewing the evidence in the light most favorable to the State, we conclude that the circuit court correctly found that the essential elements of the crime of public intoxication were proved beyond a reasonable doubt. Therefore, the circuit court did not abuse its discretion in finding petitioner guilty of public intoxication.

For the foregoing reasons, we affirm the February 21, 2020 order of the Circuit Court of Monongalia County.

Affirmed.

**ISSUED:** January 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**
Justice William R. Wooton